Boggs & Leathe, Respondents, v. America Insurance Company, Appellant.

1. A concealment of facts by an applicant for insurance of a building against fire is not material unless a disclosure of the facts concealed would have induced the insurer to decline the risk or enhance the premium.
2. In contracts of fire insurance, it is sufficient if the applicant for insurance make true and full answers to the questions put to him by the insurer in respect to the subject of insurance; he is not answerable for an omission to mention the existence of other facts about which no inquiry is made, unless he knows such facts to be material and intentionally fails to communicate them.
3. Statements made to insurers in respect to the subject of insurance can not be invoked against the insurers to overthrow the defence of a fraudulent concealment of material facts unless such statements were made in connection with the application for insurance.

## Appeal from St. Louis Circuit Court.

This was an action on a policy of insurance against fire. The policy was issued upon a written application of plaintiffs and the personal application of and verbal statements of plaintiffs or one of them. The defence relied on is that there was a concealment of facts material to the risk. The concealment charged consisted in this, that the plaintiffs failed to state that portions of the building, a store, in which the insured goods were, were occupied as a dwelling-house by one of the plaintiffs and another.

At the instance of the plaintiffs the court gave the following instructions: " 1. If the jury find that there was a concealment of any material fact on the part of plaintiffs while engaged in effecting the insurance in question, then the policy is void and plaintiffs can not recover ; and a material fact is one which if known would have induced the insurance company to decline the risk entirely or to have charged a higher premium. 2. If you find that the families of Spore and Boggs resided in a part of the building containing the goods insured, and that fact was not known to the secretary of the defendant when the policy was issued, and which, if known, would have induced the defendant to have declined the risk or to have charged a higher rate of premium thereon, and that the plaintiffs, when making their application, concealed the facts from the proper officers of the defendant, then plaintiffs can not recover in this suit. 3. If the jury find that an interview was had between either of the plaintiffs and the secretary of the America Insurance Company touching the insurance in question at any time before the policy was issued, and in that interview said secretary was informed that some of the upper stories of the building containing the stock of goods insured were occupied as family residences for the families of Spore and Boggs, and that there was no material change in regard to such residences from the time of such interview to the issuing of the policy, then there was no such concealment as to the matter of such residences as will avoid the policy sued upon. 4. If you find that there were no specific inquiries of plaintiffs or either of them concerning the occupation of the upper stories of said building, then there was no such concealment as avoids the policy, unless you believe that plaintiffs knew that the families residing in said buildings were material facts and intentionally failed to communicate the same at the time of effecting the insurance. 5. Though the jury should believe from the evidence that the fire, which caused the loss sued for, resulted from negligence or carelessness of a servant of plaintiffs, that is no defence to this action."

The following instruction asked by defendant was given:
" 6. If the plaintiffs, or one of them, at the time the appli-
cation for insurance to the defendant was made, was inter-
rogated or inquired of by the secretary of the defendant as
to the manner the building was occupied or used in which
the property insured was situated; if in answer to such in-
quiries the plaintiffs neglected or failed to state that the said
building was then occupied and used in part by their own
families and the family of the witness Spore, as given in evi-
dence; if the jury find from the evidence that the manner
in which said building was occupied was a material fact for
the defendant to know in respect to taking the risk under
the policy in question; then the plaintiffs can not recover in
this action, and the jury should find for the defendant, unless
the jury at the same time find from the evidence that the
defendant knew said building was occupied when the policy
in question was issued."

Other instructions asked by defendant were refused.

*Krum & Harding*, for appellant.

I. There was error in the first and second instructions
given on behalf of plaintiffs, in this, that both assert and
assume the principle that there could have been no material
concealment unless the fact concealed was such that, if
known to the defendant, the risk would have been declined
or a higher rate of premium charged. It is sufficient if a
misrepresentation *tend* to influence the insurer's estimate of
the character and degree of the risk; or if there be a con-
cealment of a fact which, if communicated, would tend to
prevent the insurer from entering into the contract or to
demand a higher premium. (1 Phill. on Ins. § 524, 531.)
The instructions directed the minds of the jury, not to the
·question whether the facts alleged to have been concealed
enhanced the risk, but to the inquiry whether defendant
might not have entered into the contract with as well as
without knowledge of these facts. Under these instructions
the jury might very well come to the conclusion that the

risk upon goods in a house occupied as these premises were would be greater than upon goods in a store-house not used for the residence of families, and that plaintiffs failed to communicate the facts respecting the nature of the occupation of the premises; while at the same time they might also find that the concealment was not material, because defendant *might* have taken the risk on the same terms even if the enhancement of the risk had been known to them. The use of the words " concealment " and " concealed " in said instructions being unexplained, was calculated to mislead the jury. They would naturally infer that there must have been an intentional or dishonest suppression of facts in order to constitute a concealment. (1 Phill. on Ins. § 537, 546.)

II. The court erred in giving the third instruction. The conversation with Boggs was before any application was made for insurance.

III. The fourth instruction given was not law. The rule is that any circumstance evidently and materially enhancing the risk of fire, known to the applicant at the time of insuring, and not known or presumed to be known to the insurer, and of which he is not bound to inform himself or take the risk of it, must be disclosed, though no inquiry is made respecting it. (1 Phill. on Ins. § 635.) No one would have reason to suppose that families resided in the building. Such use of a building of that description was so unusual that no inquiry was necessary in order to make it plaintiffs' duty to disclose the fact. (1 Phill. on Ins. § 635.) That the risk was materially enhanced by the keeping of numerous fires in the upper stories is too clear for argument. The instruction requires the questions to be specific.

IV. The court erred in refusing the third and fourth instructions asked by defendant.

*Drake,* for respondents.

I. The law governing misrepresentations and concealment in obtaining a policy of fire insurance was correctly laid down by the court. The premises were accessible and open

to the underwriter's examination. They were only a few blocks from the insurance company's office. The company can not avoid payment of the loss on the ground that the insured did not disclose a material fact unless the insured knew the fact to be material and concealed it. (5 N. Y. 469.) When the underwriter makes specific inquiries about any matter connected with the premises, the applicant must respond fully and truly. If he does not, it is a concealment which avoids the policy whether the matter be material or not. (Angell on Life and Fire Ins. § 177.) If the underwriter knows of the existence of a fact, it is no concealment not to state it. (Carter v. Boehm, 3 Barr. 1910.) The materiality of any fact is a question for the jury, and depends upon whether if known to the underwriter it would have caused him to decline the risk entirely or to charge a higher premium. (Angell on Fire and Life Insurance, § 175, 122; 2 New York, 43.)

EWING, Judge, delivered the opinion of the court.

The questions to be considered arise upon the instructions given and refused. The first and second given for the plaintiff, it is maintained, are erroneous in declaring that there is no material concealment unless the fact concealed was such that if known to the defendant the risk would have been declined or a higher rate of premium would have been charged. The correct rule, it is maintained, makes the distinction between a material and an immaterial fact, as the terms are here employed, to consist in its *tendency* to prevent the insurer from taking the risk or demanding a higher premium; and it is objected that the instructions improperly directed the minds of the jury, not to the question whether the fact alleged to have been concealed enhanced the risk, but whether the defendant might not have entered into the contract.

The question of the materiality or immateriality of the fact is always for the jury; and there would seem to be no other practical or reasonable guide for juries than the rule

as laid down in the instruction. An insurer, in deciding whether he will take a risk of this kind and the rate of premium he will charge, is presumed to do so upon an examination of all the circumstances connected with the subject of insurance affecting the risk, and whatever does not affect the risk so as not to enhance it can not be supposed to have influenced his determination, or to have entered into his estimate of the rate of premium charged. So the jury under the instruction, in determining whether a higher rate of premium would have been demanded, or the risk declined, must pass upon the materiality of the fact alleged to have been concealed, and the test of this is whether such fact enhanced the risk; if it did not, it could not be said to be material.

Mr. Angell defines a material fact to be one which if communicated to the underwriter would induce him either to decline an insurance altogether, or not to accept it unless at a higher premium. (Angell on Life and Fire Ins. § 175.) Another author gives the same definition. (1 Arnold on Ins. 536.) Mr. Duer says it can not be said that a concealment is material unless the court or jury are satisfied that a disclosure of the facts concealed might reasonably have induced the underwriter to decline the risk or enhance the premium. (2 Duer, Ins. 393.) The question, he says, is not whether the loss that is claimed is attributable in any degree to the risks that were concealed; but whether, had the facts been known, the underwriter would have subscribed the policy or would have limited himself to the premium that he received. (Ib. 382.) To the same effect is Carter vs. Boehm, 3 Barr. 1911.) In Murgatroyd v. Crawford, 3 Dallas, ——, the rule is expressed thus: that if in the opinion of the jury a knowledge of the circumstances that were suppressed would have induced the insurer to demand a higher premium, or to refuse altogether to underwrite, it will be sufficient on commercial principles to invalidate the policy.

The fourth instruction given on behalf of the plaintiffs declares that if there were no specific inquiries of the plain-

tiffs or either of them concerning the occupation of the upper stories of the building, there was no such concealment as avoids the policy, unless they believe the plaintiffs knew that the families residing in the building were material facts, and intentionally failed to communicate the same at the time of effecting the insurance.

The general rule undoubtedly is that any circumstance evidently and materially enhancing the risk must be disclosed by .the applicant for insurance though no inquiry is made respecting it, but in its application to fire insurance it is to be taken with the qualification that such circumstances were known to the applicant at the time of insuring and not known or presumed to be known to the insurer, and of which he is not bound to inform himself or take the risk of it, and that there is no·concealment. A more rigid rule obtains in marine insurances, and this greater strictness results from the necessity of the case and from the inequality of the contracting parties as it respects a knowledge of circumstances affecting the risk in the one case and not in the other, the confidence that the insurer is obliged to repose in the assured, and the consequent obligation on the latter to good faith in disclosing information which is known to himself and of which the underwriter is presumed to be ignorant. This distinction is well supported by authority.

Mr. Angell, in his work on Insurance, page 209, says the strictness and nicety required in questions arising on policies of marine insurance are not to their full extent applicable to policies of fire insurance, the former being entered into by the underwriters almost exclusively on the statements and information given by the assured himself; in the latter the underwriters assume the risk on the knowledge acquired by an actual survey and examination made by themselves, and not on representations coming from the assured.

In Clark v. Manufacturers' Insurance Co., 8 How. 235, the insurance was upon a cotton factory, and one question was as to the use of lamps in the picker room. The court held that if no representations were made or asked it would not

be the duty of the insured to make known the fact that lamps were used in the picker room although the risk might have been increased thereby, unless the use of them in that way was unusual. Justice Woodbury, in delivering the opinion of the court, observes that, " as to the ordinary risks connected with the property insured, if no representations whatever are asked or given, the insurer must be supposed to assume them, and, if he acts without inquiry anywhere concerning them, seems quite as negligent as the insured who is silent when not requested to speak."

In contracts of fire insurance, there being no fraud, if the applicant make a true and full answer to the questions put to him by the insurer in respect to the subject of insurance, it is enough ; he is not answerable for an omission to mention the existence of other facts about which no inquiry is made of him, though they may turn out to be material for the insurer in taking the risk; (Gates v. Madison Co. Mutual Ins. Company, 5 N. Y. 475 ;) because, observes the court, he has a right to suppose that the insurer, in making inquiries in respect to the particular facts, deems all others to be immaterial to the risk to be taken, or that he takes upon himself the knowledge or waives information of them. To the same effect is Bennett v. Saratoga Co. Fire Ins. Company, 5 Hill, 192. In the Protection Ins. Co. v. Harmer, 2 Warden, O., 472, the point was not necessary to the decision of the case, but the doctrine of the cases above cited is approved, and the propriety of the distinction there taken between fire and marine insurance distinctly recognized. After showing the grounds of this distinction, and that the reason of the rule as to concealments, and the policy on which it is founded in its application to marine risks, entirely fails when applied to fire policies, Judge Raney, who delivered the opinion of the court, lays down the rule thus : " That all that is required of the assured (in fire policies) is that he shall not misrepresent or designedly conceal any facts material to the risk, and that he answer in good faith all questions asked him by the insurer, unless the fact not communicated is one of unusual peril to

the property, and could not with reasonable diligence be discovered by the insurer or anticipated as a foundation for a specific inquiry." We are of opinion the fourth instruction is substantially correct.

The plaintiffs' third instruction is erroneous, and for this the judgment must be reversed. It appears from the testimony of the secretary of the company that the application for insurance was made by Leathe, one of the plaintiffs, at which time inquiries were made respecting the occupancy of the building; that, some months prior to taking out the policy, Boggs, the other plaintiff, spoke to him about insurance, but he did not consider him as making an application for insurance, and the matter was not formally considered by the directors; and that he made no particular inquiry of Boggs as to the manner the building was occupied, but asked him how it was occupied; that the only application for this insurance acted on by the directors was that of Leathe.

From the deposition of one Ford, read by the plaintiff, it appears that he was present with Boggs at the office of defendant, on one occasion when he, Boggs, went there for the purpose of getting insurance on the stock of plaintiffs in the "Ten Buildings;" that Boggs told the secretary that a part of these buildings were occupied by his own family and that of one Spore, and that the secretary took a memorandum at the time and said he would lay it before the board, but did not see Boggs sign any application, and knew nothing of the terms of any agreement. When this interview took place between Boggs and the secretary of the defendant is not stated with any precision by the witness Ford; but it is evident that it was before the policy was issued, and was not at the time at which Leathe applied; how long before does not appear. It seems that the only application for insurance that was considered by the company, and upon which the policy issued, was that made by Leathe, and if so the defendant is not bound by any communications made at the interview between Boggs and the secretary before the insurance was effected, and not connected with an application therefor.

It is equally clear that the plaintiffs would not be liable for any concealment or representations that Boggs might have made concerning the subject of insurance under such circumstances, and they would have been no defence in an action by them against the company; for in such cases there is no obligation to disclose facts affecting the risk.

Whether the communications made by Boggs to the secretary at the interview referred to in the third instruction were or were not connected with the insurance that was effected, or related to an application therefor, was for the jury to determine; but, under the rather vague and indefinite phraseology of the instruction, they were not so restricted as they should have been.

The second instruction asked by the defendant, (refused by the court,) being unintelligible as the records present it, will not be noticed, and the third was embraced substantially in the one given for the defendant, and was therefore well refused.

Judgment reversed and the cause remanded; Judge Scott concurring. Judge Napton absent.