ALICE FARBER, Respondent, v. AMERICAN AUTOMOBILE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, April 6, 1915.

1. FIRE INSURANCE: Valued Policy Law: Effect of Misrepresentation Concerning Value of Property. Sec. 7030, R. S. 1909, providing that no insurance company shall take a risk on any property at a ratio greater than three-fourths of its value, and, "when taken," its value shall not be questioned in any proceeding, applies to insurance on personal and real property, and is a part of every policy of fire insurance, and estops insurer, issuing a valid policy, from disputing the value of the property at the time of issuance of the policy, but fraudulent representations of fact, designedly made by insured, relative to the value of property, as an inducement to the contract of insurance fixing the valuation, if believed and acted on by insurer, so as to cause it to issue a policy in excess of the true value of the property at the time, will render the policy void from its inception, and the fraudulent representations may be shown in defense; the words "when taken" implying that the negotiations antecedent to the policy shall be honest and fair as to material matters, to the end that a valid contract as to value may be had. *Held*, by REYNOLDS, P. J., in a separate opinion, that the question of the value of the property destroyed is not open to inquiry, and that a false representation concerning its

cost is not such a fraud as will avoid the policy, in view of the Valued Policy Law (Sec. 7030, R. S. 1909).

2. ————: Misrepresentation Concerning Cost of Property: Question for Jury. In an action on a policy insuring the owner of an automobile against loss by fire, *held*, under the evidence, that whether plaintiff, in procuring the insurance, made a false representation concerning the cost of the automobile was a question for the jury.

3. ————: ————: "Cost:" "Value." A statement of the actual cost of an article is one of fact; while a statement concerning its value savors more or less of opinion, and, therefore, the overvaluation of property insured must be grossly enormous to admit of any dispute, and a statement of value, if honestly made, will not vitiate the policy.

4. INSURANCE: "Insurance. Brokers:" Agent of Insurer or Insured: Statute. Sec. 7049, R. S. 1909, declaring that whoever, for compensation, acts in any manner, in negotiating contracts of insurance, for any person other than himself, not being the agent or officer of insurer, shall . be deemed an "insurance broker," is a mere general declaration of the law as to the function of an insurance broker, and does not render a broker in every transaction the agent of insured, and, notwithstanding the statute, a broker may become the agent of insurer because of some special condition or circumstance attending the particular case.

5. ————: ————: ————: Facts Stated. An insurance broker sought out a buyer of an automobile to procure insurance on it, and presented his card, reciting that he was special agent for a company engaged in the insurance business, which was not the insurance company that subsequently issued the policy. Nothing was said to the effect that he was a broker, or anything other than an insurance agent. Subsequently he returned with a policy, which included insurance against loss by theft and fire and insured refused to accept it, because he wanted fire insurance only. Thereafter he delivered a policy insuring against loss by fire, upon which, after it had been delivered to him by insurer, he stamped his name and a recital that he was "special agent" of insurer. The broker was intrusted by insurer with the underwriting of the policy and was also authorized to deliver the policy and collect the premium and to retain a commission out of the premium as his compensation. In an action on the policy, *held* that the broker was not the agent of insured, but of insurer, and hence insured was not bound by false representations made by the broker to insurer to procure the policy, and this is true notwithstanding the false statement appeared in the policy.

6. ———: ———: ———. A mere insurance broker who is intrusted by insurer with the delivery of a policy and the collection of a premium is the agent of insurer for such purpose, for an insurance broker, as such, has no authority to receive a premium from an applicant for insurance.

7. ———: ———: ———. Where an insurance broker pro-, cured a fire insurance policy on an automobile which cost insured $1427, and indorsed on the policy a statement that the cost was $2000, and the broker was the agent of insurer in the transaction, insurer was estopped from contradicting the indorsement, although insured accepted and retained the policy.

8. FIRE INSURANCE: Misrepresentations: Breach of Warranty: "Fact Material to Risk:" Statute. Sec. 7025, R. S. 1909, providing that the warranty of any fact incorporated in a fire insurance policy, purporting to be assented to by insured, which shall not materially affect the risk, shall be taken as a representation only, does not impair the effect of a warranty pertaining to a fact material to the risk insured against, unless otherwise concluded by some other statute; a "fact material to the risk" in the law of insurance being one which, if communicated to the agent, would induce him either to decline the insurance altogether, or not accept it unless a higher premium is paid.

9. ———: ———: ———: Breach of Warranty: Effect of Valued Policy Law. While a representation that an automobile, insured against fire in the amount of $1750, cost insured $2000, whereas, in fact, it cost only $1427, was material to the risk insured against, within Sec. 7025, R. S. 1909, providing that the warranty of any fact in a fire insurance policy not materially affecting the risk shall be deemed a representation only, and was a warranty under a policy stipulating that insured warrants statements made by him to be true, nevertheless, under Sec. 7030, R. S. 1909, which provides that no insurance company shall take a risk on any property at a ratio greater than three-fourths of its value, and, when taken, its value shall not be questioned in any proceeding, the misrepresentation would not defeat a recovery on the policy, on the theory that insured breached a warranty concerning a matter material to the risk, since it is the duty of insurer, under Sec. 7030, to determine the value of the property insured and the amount of insurance to be written thereon, and it is estopped from disputing the value thus fixed, where such value is fixed through a valid contract, free from fraud and deceit in its inception.

Held, by ALLEN, J., in a separate opinion, that the misrepresentation was available as a defense, on the theory that insured breached a warranty concerning a matter material to the risk, since, while Sec. 7030 does not permit insurer

to dispute the value of the property at the time of the issuance of the policy, in order to reduce the amount of recovery, nevertheless that section does not render nugatory a warranty otherwise material to the risk merely because it is utilized as a factor in estimating value.

10. **EVIDENCE: Opinion Evidence: "Value:" "Cost."** The value of an article is regarded as the market value—that is, the price it would command in the open market—and is frequently, in the event there is no ready market, a matter of opinion; whereas the cost of an article is the amount which one has paid out for it, and about which he is fully advised and may make a positive statement of fact.

[Reynolds, P. J., dissents in part and Allen, J., dissents in part.]

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*Stewart, Bryan & Williams* for appellant.

(1)   In case of total loss by fire of a second-hand automobile, the valued policy law (Sec. 7030, R. S. 1909), does not preclude the defenses of breach of warranty and fraud in the inducement based upon misstatements as to its cost made by the assured at the time the policy was written. Sec. 6009, R. S. 1879; Sec. 7020, R. S. 1909; Holloway v. Dwelling House Insurance Co., 48 Mo. App. 1; Lama v. Dwelling House Insurance Co., 51 Mo. App. 447; Maddox v. Dwelling House Insurance Co., 56 Mo. App. 343; School District v. State Ins. Co., 61 Mo. App. 597; Walker v. Phoenix Ins. Co., 62 Mo. App. 209; Baxter v. State Ins. Co., 65 Mo. App. 255; Daggs v. Orient Ins. Co., 136 Mo. 382; Orient Ins. Co. v. Daggs, 172 U. S. 557; Aetna Ins. Co. v. Simmons, 49 Nebr. 811; Craddock v. Connecticut Fire Ins. Co. (Ky.), 169 S. W. 1015; Johnson v. Reliance Ins. Co., 181 Mo. App. 443, 168 S. W. 914; 39 Cyc. 1118; Kansas City v. Bacon, 147 Mo. 259; State v. Doepke, 68 Mo. 208. (2)   In an action on a fire insurance policy for the total loss of a second-hand automobile, the plaintiff must both plead

and prove its value at the time of the loss, as the valued policy law (Sec. 7030, R. S. 1909) only relates to the value of the property at the time the policy is issued. Green v. Lancashire Ins. Co., 69 Mo. App. 429; Gibson v. Missouri Town Mutual Ins. Co., 82 Mo. App. 515; Gustin v. Concordia Fire Ins. Co., 90 Mo. App. 373; Gustin v. Concordia Fire Ins. Co., 164 Mo. 172; City of De Soto v. American Guaranty, Etc., Ins. Co., 102 Mo. App. 1; Howerton v. Iowa State Insurance Co., 105 Mo. App. 575; Stevens v. Norwich Union Fire Ins. Co., 120 Mo. App. 88; Sharp v. Niagara Fire Ins. Co., 164 Mo. App. 473.

*James M. Rollins* and *E. A. Halter* for respondent.

(1) The value of the car was fixed by the policy. Gibson v. Ins. Co., 82 Mo. App. 515; Crosson v. Ins. Co., 133 Mo. App. 537; Hilburn v. Ins. Co., 140 Mo. App. 368; Stevens v. Ins. Co., 120 Mo. App. 88; Ritchey v. Ins. Co., 104 Mo. App. 146; Sec. 7030, R. S. 1909; Daggs v. Ins. Co., 136 Mo. 395. (2) The question of fraud and false warranty cannot be raised, the value of the car being fixed by the policy, because of the valued policy law. Secs. 7020, 7030, R. S. 1909; Daggs v. Orient Ins. Co., 136 Mo. 382; Orient Ins. Co. v. Daggs, 172 U. S. 557; Gibson v. Mo. Town Mutual Ins. Co., 82 Mo. App. 515; Siegle v. Phoenix Ins. Co., 107 Mo. App. 456; Hanna v. Ins. Co., 109 Mo. App. 152; Stevens v. Fire Ins. Co., 120 Mo. App. 11; Crossan v. Fire Ins. Co., 133 Mo. App. 537; Hilburn v. Ins. Co., 140 Mo. App. 355; Surface v. Ins. Co., 157 Mo. App. 570; Burge Bros. v. Ins. Co., 106 Mo. App. 244; Williams v. Merchant's etc., Ins. Co., 73 Mo. App. 511. Spickard v. Ins. Co., 164 Mo. App. 1.

NORTONI, J.—This is a suit on a policy of fire insurance. Plaintiff recovered and defendant prosecutes the appeal.

The subject-matter, an automobile, was destroyed by fire about three months after it was insured. The policy was issued and delivered to plaintiff on the seventh day of March, 1912, and by its provisions defendant insured her in the amount of $1,750 against the loss of the automobile by fire. About three months thereafter, while plaintiff and a party of her friends were riding in the automobile on a country road near St. Louis, it suddenly became enveloped in flame and was totally destroyed. Defendant declined to pay the loss, because, it is said, plaintiff made a false and fraudulent representation material to the risk with respect to the cost of the automobile which induced the issuance of the policy in the first instance, and also because the policy stipulates a warranty in respect of the matter of its actual cost. No written application was executed by plaintiff prior to the issuance of the policy, but a schedule of statements endorsed thereon is invoked and as parcel of this a statement appears therein as follows: ''Actual cost to assured, including equipment—$2,000.'' It is said that this statement was fraudulently made on the part of plaintiff with a view of inducing the issuance of the policy in the first instance, as a deception practiced to that end, and, moreover, that it constitutes a warranty with respect to a fact material to the risk, in that it appears in the schedule of statements endorsed on the policy, for the policy recites that it was issued in consideration of the premium mentioned and the statements set forth thereon which the assured makes and warrants to be true by accepting the policy.

In its answer defendant sets forth two affirmative defenses, as above stated. The first defense pleaded and relied upon is, that plaintiff made a false and fraudulent representation to defendant, to the effect that the actual cost of the automobile to her was $2,000, with a view of inducing the issuance of the insurance policy thereon by which indemnity

Farber v. American Automobile Insurance Co.

against fire is vouchsafed in the amount of $1,750, when, in fact and in truth, the actual cost of the automobile was less than $1500; also that the fact so misrepresented was material to the risk insured against and that defendant believed and relied upon such statement and issued the policy accordingly. It is, therefore, averred that the policy was void in the first instance because of such fraud in the inducement. In connection with this defense the premium paid is tendered to and deposited in court for plaintiff. The second affirmative defense pleads the same matter as a warranty in respect of a fact material to the risk and avers that defendant is discharged of liability on the policy because of its breach.

The trial court declined to reckon with either of the defenses thus stated and peremptorily directed a verdict in favor of plaintiff for the full amount of the insurance vouchsafed in the policy, in the view that any statement made by the assured concerning the actual cost of the subject of the insurance was unavailing as a matter of defense because of our valued policy statute which becomes parcel of the policy. In other words, the court entertained and expressed the view that, under our valued policy statute, a representation as to the cost of the automobile could be regarded as material to the risk only as a criterion for the fixing of the amount of the insurance to be vouchsafed in the policy and that as the amount of the insurance stipulated is conclusively established, perforce of the statute, as not exceeding three-fourths of the value of the property insured, no representation in respect of that matter may be regarded as material to the risk.

Generally speaking, we believe this view to be sound, in so far as it pertains to a policy issued as a result of fair dealing between the parties and not contaminated in the first instance by fraud, as through deceit practiced by means of misrepresentations relative to the value of the property, which, for that rea-

son, are material as matter of inducement to the contract by which the parties stipulate and agree upon the value of the property, under the influence of the statute. Such representations, falsely made, with a fraudulent intent to influence an over-valuation of the property to be insured, ought to be regarded as material to the risk, if believed by the insurer and relied upon by him in issuing the policy and thus fixing the value by writing the amount of the insurance therein.

The statute (section 7030, R. S. 1909) among other things provides: "No company shall take a risk on any property in this State at a *ratio* greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding." This statute, it has been frequently said, applies to insurance written on personal as well as on real property. It is said that it becomes a part and parcel of every policy of fire insurance issued in the State. It appears to be something more than what is usually regarded as a valued policy statute, in that it carries an inhibition against every insurance company in taking a risk at a ratio greater than three-fourths of the value of the property. Such being true, it estops the insurer, after the issuance of a valid policy, from disputing that the subject-matter of the insurance was of the value, at the time the policy was issued, not only equal to the amount of the insurance written thereon, but one-fourth more, as well. [See Gibson v. Ins. Co., 82 Mo. App. 515; Stevens v. Ins. Co., 120 Mo. App. 88, 96 S. W. 684; Crossan v. Ins. Co., 133 Mo. App. 537, 113 S. W. 704.]

But obviously the statute intends that the contract valuation of the property so fixed by the amount of the insurance written in the policy shall be a valid one. There is nothing in the face of the statute to suggest otherwise, and, indeed, the implication is to the contrary. The statute contemplates and reckons with an insurance company in taking a risk through

issuing its policy on property. In this connection it says, "when taken, its value shall not be questioned in any proceeding." Obviously the words "when taken" imply that the negotiations antecedent thereto shall be honest and fair—that is, free from covin and deceit—with respect to material matters, to the end that a valid contract in respect of such value may be had. Although the question here made was not in decision there, our Supreme Court, in giving judgment upon the validity of our valued policy statute, which pertains to real estate alone, intimated that the question of fraud in the inducement to the valuation fixed remained open—that is, was in nowise concluded thereby. [See Daggs v. Orient Ins. Co., 136 Mo. 382, 395, 38 S. W. 85.] Then, too, in the same case, in the Supreme Court of the United States, the judgment sustaining the statute was predicated in part in this view. In speaking of the parties entering into an insurance contract under the influence of the valued policy statute involved here, the court said:

"It leaves them to fix the valuation of the property upon such prudence and inquiry as they choose. It only ascribes estoppel after this is done—estoppel, it must be observed, to the acts of the parties, and only to their acts in open and honest dealing. Its presumptions cannot be urged against fraud, and it permits the subsequent depreciation of the property to be shown. We see no risk to insurance companies in this statute. How can it come? Not from fraud and not from change, because, as we have seen, the presumptions of the statute do not obtain against fraud or change in the valuation of the property." [See Orient Ins. Co. v. Daggs, 172 U. S. 557, 565.]

It seems to be entirely clear that the statute is designed only to conclude the matter of the value of the subject of insurance stipulated in a policy contract fairly entered into with respect to such valuation. In other words, false and fraudulent representa-

tions of fact, not mere expressions of opinion, designedly made with sinister motive relative to the value of the property as an inducement to the contract of insurance fixing the valuation, if believed and acted upon by the insurer so as to cause the company to issue a policy considerably in excess of the true value of the property at the time, should be regarded not only as material to the risk but sufficient to render the contract void from its inception.    In this view, such matter may be shown in defense notwithstanding the valued policy statute. [See Aetna Ins. Co. v. Simmons, 49 Neb. 811; Hartford Ins. Co. v. Redding (Fla), 67 L. R. A. 518.   See also 1 May on Insurance (4 Ed.), section 30.]

Such is true, too, in respect of a statement concerning the "cost to the insured" of the subject of the insurance, for a representation as to such cost is material to the risk when considered apart from the valued policy statute entirely.   This, no doubt, is because of the element of hazard which attends a situation where one may buy an article at a certain price and then insure it for an amount exceeding the price paid in order to destroy it and thus realize a profit. [Craddock, Vinson & Co., v. Ins. Co., 160 Ky. 519, 169 S. W. 1015.]   Here, the representation as to the cost of the automobile, if made with a fraudulent intent in order to procure an overvaluation in the policy, as by an overinsurance, is to be regarded as material to the risk, on the issue of fraud in the inducement to the contract fixing the value, for the reason that it antedated the issuance of the policy.  The policy is, therefore, free from the influence of the statute and the subject matter of the inquiry is in nowise concluded by its operation on a valid contract of insurance through which the value was fixed and determined.   Indeed, the entire defense of fraud above stated penetrates quite beyond the influence of the valued policy statute and operates on the inducement to the contract

by which the value of the property is said to be fixed at its very inception. In this view, the court erred in eliminating this defense by instruction, for there was substantial evidence tending to support it.

But though a statement of the actual "cost" of an article is one of fact, a statement pertaining to the value of any property more or less savors of opinion. Therefore, it is said by Mr. May, in his valuable work on Insurance: "The overvaluation, in the expressive language of Mr. Justice Yeates, must be 'grossly enormous' to admit of any dispute. The statement as to value of property insured is not a warranty but matter of opinion, which, if honestly entertained, does not vitiate the policy." [See 1 May on Insurance (4 Ed.), section 30.]

This court has heretofore expressed a similar view with respect to a representation concerning the value of the property insured, for it is said that while the value is ascertained by the market price, as a general rule statements concerning the value of property savor much of opinion and, therefore, a slight overestimate by the assured of the value of a house should be accounted for rather by a difference of opinion than on the grounds of fraud. [See Hubbard v. Ins. Co., 57 Mo. App. 1, 6, 7.] But though such be true in respect of the statements concerning value, it is otherwise with a statement as to the cost of an article, for such is a fact and in no sense partakes of opinion.

The relevant facts, in so far as the defense of fraud is concerned, will be stated in substance. It appears plaintiff purchased the automobile from one Burns about March first at the price of $1000. The automobile was a second-hand touring car and it sold originally, when new, for some $3500 or $4000. After purchasing the car second-hand from Burns, plaintiff added to it other equipment at an outlay of $427.46, so it appears at the time the insurance was effected the automobile had actually cost her $1427.46. Plaintiff

herself testifies to these facts, but she asserts, too, that she made no representation whatever concerning the cost of the car to defendant, nor to Manker, who negotiated the insurance. It appears that Manker was an insurance broker and a friend of Burns, from whom plaintiff purchased the automobile. Burns informed Manker that he had sold an automobile to plaintiff and suggested that he should see her about insurance. Thereafter Manker called at plaintiff's residence and solicited the insurance. Plaintiff did not know Manker and he introduced himself as having been sent by Burns, from whom she purchased the car, to see her about insurance on it. At the same time he gave plaintiff a card bearing his name and words to the effect that he was special agent for the Fidelity & Casualty Company of New York with offices at 308, 314 Rialto Building, St. Louis, Missouri.

There is nothing in the record tending to prove that plaintiff knew Manker was an insurance broker. Manker himself, testifying for defendant, says, ''Well, in the first place, I told her that Mr. Burns had sent me over there to insure her automobile.'' Manker says he did not see the automobile but inquired of plaintiff as to the cost of it and she told him that it had cost her about $2000; that he made a note of this statement in a memorandum book, called at defendant's office in St. Louis, and communicated the fact to Mr. Crawford, its superintendent, in connection with the proposal for insurance on the car. Plaintiff says that she made no such statement to Manker, but that he went in company with her husband, viewed the car and fixed the value and the amount of the insurance himself. Indeed, plaintiff testifies that Mr. Manker seemed to know all about what the car had cost her and congratulated her on the bargain, as if he were apprised of the purchase price through his friend Burns, who had suggested that he solicit the insurance on it. At any rate, Manker departed and in a day or

two returned to plaintiff's residence with a policy of insurance against fire for $1750, but including also insurance on the automobile against theft. Plaintiff declined to accept this policy because she had not contemplated insuring it against theft and Manker departed but returned thereafter with the policy now in suit, issued by defendant at $1750 insurance on the automobile against fire, and delivered this policy to her. On the back of the policy, at the time of its delivery to plaintiff, appeared Manker's name, as follows, affixed by the impression of a rubber stamp: "H. E. Manker, special agent, 314 Rialto Building, St. Louis, Missouri."

On delivery of the policy, plaintiff paid Manker the premium of $43.75, and it appears conclusively that Manker paid this amount to defendant for the policy, less his commissions of twenty per cent, which defendant allowed him to withhold as his compensation. Manker testifies that he is, and was then, an insurance broker and had no commission of authority or an appointment from defendant as its agent. Also it appears from the testimony of Manker and defendant's superintendent that Manker's name as special agent was not on the policy when delivered to him by the insurance company, but that he affixed it by means of a rubber stamp afterwards and before delivery to plaintiff. It appears, too, that Manker placed insurance frequently with defendant, and, indeed, its superintendent, Crawford, who wrote the policy, testifies that he was in the office of defendant placing insurance with them on an average of once a week, and that it was the custom to pay him twenty per cent commissions—that is, Manker deducted such percentage of commissions from the premium collected by him on the delivery of policies. Furthermore, Crawford, the defendant's superintendent, says that he sent no one to inspect the car, but accepted the risk on his recommendation because he knew Manker. "We deal only with brokers that we know. Now, it is a matter of honor among insurance

men that a reputable broker, a man whom we will deal with, will not misrepresent a risk deliberately, and they come into the office and we ask them, or they give us the information that we want, and we rely upon what they give us."

The case is presented and argued throughout on the theory that Manker, insurance broker, was the agent of plaintiff in effecting this insurance, and that his representation to defendant's superintendent, Crawford, who approved the risk at the time the policy was issued, that the automobile actually cost $2000 was a representation made by plaintiff through her agent, and she is, therefore, responsible for it. Of course, if plaintiff made such representation to Manker with a view of overinsuring her property and he communicated it to the defendant, she is responsible therefor whether Manker was her agent or the agent of the company; but she says she made no such representation, while he says she did.

However, the argument proceeds as though Manker is plaintiff's agent merely because of the fact that he was an insurance broker and that this is true as a matter of law, but we are not so persuaded. Even though Manker is an insurance broker and follows that calling, it is entirely clear that there is no evidence in this record revealing him to be in law the agent of the insured. It is equally clear that, on the conceded facts of the case, Manker was the agent of defendant, not only for the purpose of delivering the policy and collecting the premium thereon, but even more, when the acts of ratification are viewed.

It is true our statute (section 7049, R. S. 1909), requiring insurance brokers to take out license, declares that "Whoever, for compensation, acts or aids in any manner in negotiating contracts of insurance or reinsurance, or placing risks or effecting insurance or reinsurance for any person other than himself, and not being the appointed agent or officer of the company in

which such insurance or reinsurance is effected, shall be deemed an insurance broker, and no person shall act as such insurance broker, save as provided in this section, etc.'' But this is a mere general declaration of the law as to the function of an insurance broker and does not render him in every transaction the agent of the insured, for the facts attending the negotiations determine for whom he is acting. Notwithstanding the statute, a broker may become the agent of the insurer because of some special condition or circumstance attending the particular case. [See Pringle v. Aetna Life Ins. Co., 123 Mo. App. 710, 101 S. W. 130; 1 May on Insurance (4 Ed.), section 124.]

Here, it is certain plaintiff did not deal with Manker as a broker. She did not seek him out and appoint him to act for her, but rather he called at her residence, ostensibly as an insurance agent, and in his own language stated that he had been sent at the behest of Burns ''*to insure her automobile.*'' He gave plaintiff his card which recited that he was special agent for a company engaged in the insurance business, though not this defendant. Nothing was said to the effect that he was a broker or anything other than an insurance agent as he appeared to be and it is manifest plaintiff dealt with him as such. Subsequently he returned with a policy which appeared to include insurance against theft as well as fire, and plaintiff declined to accept this, for the reason that she had not applied for insurance of that character. Obviously, in respect of this matter, Manker was acting for some one other than plaintiff, for he tendered a policy different and distinct from that for which she had applied and one which would naturally require an additional premium. It does not appear as to whether Manker's name as agent was on the first policy tendered or not, but, be that as it may, he returned the first policy to the company and delivered another, insuring against fire only,

191M.A.21

in accordance with plaintiff's original request, and on this policy his name appeared affixed by means of a rubber stamp, as special agent for defendant company, though the evidence is, this was not done in the insurance company's office, but after the policy had been delivered to Manker.   However plaintiff did not know this.   All of these facts suggest that Manker approached plaintiff as an insurance agent, authorized to effect insurance for an insurance company, and there is not a word in the case to suggest that she gave him general authority about placing the insurance. Moreover, on delivering the policy, plaintiff paid him the premium in full for the company.   Then, too, according to Crawford, the company billed the policy to Manker, as if he, and not plaintiff, was its debtor for the premium.

It is certainly clear that there is nothing in the facts above stated suggesting that plaintiff employed an insurance broker to act as agent for her.   In respect of a very similar situation, Judge BREWER, subsequently Mr. Justice BREWER of the Supreme Court of the United States, said:

"It seems to me, from whichever standpoint you approach this case, that it would not be fair to release the defendant company from liability.   The plaintiff did not go to an insurance broker to employ him to solicit insurance.   He never thought of employing an agent to act for him; but he, as principal, wanting to buy insurance, went to a man who was selling insurance, and proposed to buy from him $20,000 worth of insurance.   Judge Ames proposed to sell it to him, and they each stood in the relation of principal in that negotiation."   [May v. Western Assur. Co., 27 Fed. 260; see also McGraw v. Ins. Co., 54 Mich. 145.]

So it is here.   These parties at that time stood in the relation of principals.   Plaintiff and Manker were strangers to each other, having had no previous dealings whatever, and this being true, the presumption

which attended the situation at the time, in view of the representations made by Manker, is that he was an agent representing an insurance company which desired to negotiate with her. It is certain plaintiff did not employ him as an insurance broker to represent her. So far as this record discloses, she never thought of employing Manker to act as her agent. This much may be said concerning the original negotiation touching the insurance, and, as the matter progressed, the character of Manker as an insurance agent, in contradistinction from an agent for plaintiff, was more highly developed. He first tendered her a policy for which she had not applied, as if he desired to sell it, and this she refused. Immediately thereafter he delivered plaintiff an insurance policy the one now in suit, bearing his name as special agent and also collected the premium thereon from plaintiff for the company. Obviously this appeared to confirm his authority as by ratification. Such is the situation when viewed from the standpoint of plaintiff, and it is clear Manker was not her agent.

We look now to his negotiations and conduct from the standpoint of defendant. Manker was entrusted by defendant to deliver the insurance policy and collect the premium thereon, and out of such premium he was paid as his compensation a commission of twenty per cent. He was not the agent of plaintiff, and it is important to inquire: Whom did he represent in this transaction? The question is to be answered by reference to the proprietary interest in the policy and the moneys collected thereon, with a view of ascertaining who it was reposed trust in him with respect of that matter. To whom did the policy belong until delivered to plaintiff? The answer is, to defendant. When payment was made by plaintiff to Manker for the policy, to whom did the moneys thus collected by him belong? Such moneys, of course, belonged to defendant, and he collected for it. Out of moneys thus received by

defendant Manker received his compensation. In respect of this matter there can be no question concerning the fact that Manker was the agent of defendant for the purpose of delivering the policy and collecting the premium thereon, though it may be that his agency does not extend beyond this, on these facts alone.

This court has heretofore declared that a mere insurance broker, as such, is without authority to receive a premium from an applicant for insurance. [See Gentry v. Ins. Co., 15 Mo. App. 215.] The authorities rule, too, without dissent, that a mere insurance broker who is entrusted by the company with the delivery of the policy and the collection of the premium is to be regarded as the agent of the company for such purpose. [See Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545; Indiana Ins. Co. v. Hartwell, 123 Ind. 177; Gaysville Mfg. Co. v. Phoenix Ins. Co. (N. H.), 36 Atl. 367; Estes v. Home, etc. Ins. Co. (N. H.), 33 Atl. 515; Monitor Ins. Co. v. Young, 111 Mass. 537; Farmers, etc. Ins. Co. v. Wiard, 59 Neb. 451.] If, then, Manker was not the agent of plaintiff and represented himself to her as an insurance agent, which representation during the transaction subsequently appeared to her to be ratified by the defendant company through the delivery of its policy and the collection of premium by Manker, whose agent should he be regarded, in the matter of making the representation said to be false— that is, in event it be found plaintiff made no such representation to him? If plaintiff neither made such representation to him nor authorized him to make one for her, then the representation is, of course, in nowise binding upon her. It may not be imputed to her, through an agency on the part of Manker, for such does not appear.

It would seem, therefore, if plaintiff did not make it, that in respect of this representation Manker was acting for the insurance company, rather than the plaintiff, because the insurance company was accus-

.tomed to deal with him and pursued an established custom of trusting to representations made by him. Indeed, Mr. Crawford, the superintendent of defendant, testified that Manker was in his office on an average of once a week and frequently placed business with the company, also that the company made no examination of the property on which it placed insurance because it trusted to the representations made by brokers, such as Manker, who were well known to it. The reposing of trust and confidence in respect of a particular subject-matter in a transaction of this character inheres with an agency thereabout, and if insurance companies see fit to trust brokers concerning such matters, when, as here, the broker is not the agent of another, they should bear the burden thus voluntarily assumed. Especially is this true when the custom is considered, which obtains between the company and certain brokers, of whom Manker is one and about whom Mr. Crawford testified. In such circumstances, the company having made the broker its agent for the purpose of delivering the policy, collecting the premium, compensating him for the service by an allowance of commission, and moreover established and pursued a custom in accepting the representations of the broker as to such material matters concerning the property insured, the broker is to be regarded as the agent of the insurance company thereabout, in cases such as this one, where it is entirely clear that he is in no manner the agent of the insured. [May v. Western Assur. Co., 27 Fed. 260; Queen Ins. Co. v. Union Bank & Trust Co., 111 Fed. 697; Lehmann v. Ins. Co., 183 Mo. App. 696, 167 S. W. 1047; Indiana Ins. Co. v. Hartwell, 123 Ind. 177.]

In the circumstances appearing in this record, the representation as to the cost of the automobile, if not made at all to Manker, must be regarded as a representation of the agent of the insurance company and one for which plaintiff is in nowise responsible. [See

McGraw v. Ins. Co., 54 Mich. 145; Lehmann v. Ins. Co., 183 Mo. App. 696, 167 S. W. 1047.] Then, too, if it be that Manker was informed of the true cost of the car, as plaintiff says he was (for, according to her testimony, he seemed to know all about it and congratulated her on the bargain), and, notwithstanding this knowledge, procured the policy to be issued by defendant, without any representation as to its cost on the part of plaintiff, the statement of the actual cost of the car to be $2000 on the schedule of statements endorsed on the policy is to be regarded as that of the company with full information, and it is estopped to assert the contrary. This is true, too, though it appears in the policy, which she accepted and retained. [See Williams v. Bankers' etc. Ins. Co., 73 Mo. App. 607; Shell v. Ins. Co., 60 Mo. App. 644, 649; Farmers' etc. v. Wiard, 59 Neb. 451; Combs v. Hannibal, etc. Ins. Co., 43 Mo. 148; Ormsby v. Ins. Co., 105 Mo. App. 143, 79 S. W. 733.]

We come now to consider the question of warranty under the influence of our valued policy statute. According to the terms of the policy, it stipulates a warranty on the part of plaintiff to the effect that the actual cost of the automobile was $2000, whereas, in truth and in fact, it appears beyond question, in plaintiff's evidence, that such actual cost was $1427.46. The defense of breach of warranty proceeds according to the conception of a valid contract between the parties, for plaintiff is suing on the policy and defendant invokes the covenant of warranty in defense. In this the subject-matter in judgment is to be distinguished from the proposition advanced as a matter of fraud in the inducement at the inception of the contract and before it was entered into. The warranty asserted is affirmative in its character, in that it stipulates the automobile cost plaintiff $2000, and the important question for consideration is as to whether it pertains to a fact material to the risk, in view of the statute

fixing the amount of the insurance stipulated in a valid subsisting contract of insurance between the parties as three-fourths of the value of the property at the time. Formerly the law required literal compliance with a warranty of fact, whether material or not, in an insurance contract, and for the breach of such avoided the policy, but this rule no longer obtains, for the statute (section 7025, R. S. 1909) provides otherwise. By the provisions of that statute, the warranty of any fact or condition incorporated in a policy of fire insurance, purporting to be assented to by the assured, which shall not materially affect the risk insured against, shall be deemed and taken as a representation only, in a suit on the policy. Though this statute serves to annihilate the force of a warranty at common law touching immaterial matters, it in nowise impairs the effect of a warranty pertaining to a fact material to the risk insured against, which is otherwise not concluded by some other statute—that is, remains open as a competent subject of contract and a warranty in respect of such fact in such cases inheres with like force and effect as attended them prior to the statute. [See Dolan v. Ins. Co., 88 Mo. App. 666; Kenefick v. Ins. Co., 205 Mo. 294, 103 S. W. 957.] A fact material to the risk, in the law of insurance, is said to be one which, if communicated to the underwriter, would induce him either to decline the insurance altogether or not to accept it unless a higher premium is paid. [See Boggs & Leathe v. Ins. Co., 30 Mo. 63, 68. See, also, 1 May on Insurance (4 Ed.), section 184.]

There can be no doubt that a representation of fact to the effect that the automobile cost $2000 should be regarded as material to the risk insured against, ordinarily and, therefore, a warranty in the policy in suit and as such available to defendant, even under our statute above quoted, if the question were to be considered separate and apart entirely from our valued policy law. Indeed, such a representation has been

determined to be material to the risk by the Kentucky court, but the valued policy law, if any obtains in that State, does not appear to have been reckoned with thereon. [See Craddock, Vinson & Co. v. Ins. Co., 160 Ky. 519, 169 S. W. 1015.]

However this may be, a false statement of fact, which operates only to induce the amount of the insurance, may not be regarded as a warranty, in view of our valued policy statute, when considered apart from fraud entirely as essential to the conception here. The statute (section 7030, R. S. 1909) provides no company shall take a risk on any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken its value shall not be questioned in any proceeding. This statute not only renders the insurance contract subordinate to its provisions but it becomes parcel of the policy as if expressly stipulated therein. [See Havens v. Ins. Co., 123 Mo. 403, 27 S. W. 718.] In view of the statute and its so becoming parcel of the policy, it has heretofore been determined that any representation stipulated in the policy to be a warranty of fact with respect to the value of the property is to be disregarded as immaterial to the risk, in that such is not open, that is, subject to, a contract of warranty. This must be true because the valued policy statute, fixing the insurable value, is parcel of the contract of insurance and the matter of a warranty arises only on a valid and subsisting contract between the parties by which such value is determined. The law, having fixed the value of the property by reference to the amount of insurance written in the policy, manifestly it will not tolerate a stipulation in the same contract, such as a warranty pertaining to value designed to thwart the purpose of the statute and one which makes for the undoing of the value solemnly ascertained and agreed upon in the policy. The statute above quoted is not only a valued policy law but it carries as well an inhibition against

an insurance company issuing an insurance policy on property to exceed three-fourths of its value. It proceeds in the view that the insurer shall go out and investigate the value of the property himself and determine the matter as to the amount of insurance which should be written thereon, not exceeding, however, three-fourths of its value. It is true the insurer may neglect to do this and thus carelessly contract to indemnify for a valuation beyond what he would otherwise do. If so, he is treated as estopped from thereafter disputing the value placed upon the property, where such valuation has been attained through a valid contract free from fraud and deceit, as pointed out above. That such is the view of the purport of the valued policy law is not open to question. [See Daggs v. Orient Ins. Co., 136 Mo. 382, 395, 38 S. W. 85; Orient Ins. Co. v. Daggs, 172 U. S. 557, 565.]

Therefore, though an insurer may set up a fraudulent valuation in the inducement of the contract going to the value, such representation or statement of fact, pertaining to the value is annihilated as a fact material to the risk, perforce of the valued policy statute, in contracts of insurance fairly made, and a stipulation in the policy with respect of that matter is to be disregarded for that reason—that is, for the reason that such fact going to the value which the insurance company is required to determine for itself may not be regarded as material to the risk after a valid policy is issued fixing such value. [See Williams v. Banker's etc. Ins. Co., 73 Mo. App. 607; Ritchey v. Home Ins. Co., 104 Mo. App. 146, 78 S. W. 341.]

But it is argued the statement of fact that the actual cost of the automobile to plaintiff was $2000 is something different and distinct from a statement of its value. Touching this it is said the value of an article is regarded as the market value— that is, the price it would command in the open market—and is frequently, in event there is no ready market, a matter of opin-

ion, whereas the cost of an article is the amount which one has paid out for it and about which he is fully advised and may make a positive statement of fact. There can be no doubt that such is an accurate statement of a clear distinction. But though such be true, the matter of the cost of the automobile to plaintiff, in any view of the case, is to be regarded within the influence of the valued policy statute, for the argument is, that defendant would not, under any circumstance, issue a policy for an amount exceeding the cost price of the article insured. If such be true, then the inquiry as to the cost and the statement with respect to it pertains solely to the amount of the insurance to be written. The amount of the insurance under our valued policy statute may not exceed three-fourths of the value of the property insured in every situation, whether such be true or not as a matter of fact, and is to be so taken and reckoned with where the case concedes the policy to be a valid and subsisting one, as is essentially the predicate for an argument based on a warranty contained in the contract. In this case, by the fact of issuing the policy for $1750, the defendant affixed a value on the automobile equal to that sum of which $1750 is three-fourths—that is, $2,187.50. But this is not important at the moment. According to the argument, if defendant had known the true cost of the automobile, it would have treated such cost as a material fact by declining to write a policy in the amount it did—that is, for the value according to the stipulation of the policy as influenced by the statute. Obviously then, the matter of fact pertaining to the cost is material to the risk only in so far as it would influence defendant's course in declining to write such amount of insurance on the automobile and thus ascribing the value imparted as a result of the transaction. This being true, the warranty, though in respect of a fact material to the risk ordinarily, is concluded as unavailing—that is, immaterial under the valued policy law. In so far as this

question is concerned, we agree with the views of the trial court thereon.

But for the reason the court peremptorily disposed of the defense relating to fraudulent representations going to the inducement to the contract by which the value of the property was fixed, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.*, concurs in all that is said in the opinion on the question of agency and likewise in what is said and the conclusion that the matter of breach of warranty may not be regarded as material to the risk, under our statute, but dissents from the conclusion reached on the matter first discussed—that is, that the valuation of the property may be challenged on the ground of fraudulent representation going to the inducement of the contract. *Allen, J.*, concurs in what is said and the conclusion reached in the opinion touching the matter of fraudulent representations in the inducement of the contract of insurance fixing the value of the property, and expresses no opinion on the question of agency, but dissents from the conclusion on the question of breach of warranty. Each files a separate opinion.

## SEPARATE OPINION.

REYNOLDS, P. J.—I agree to the reversal but with grave doubt as to whether that should be the order. I am very strongly inclined to think that a misrepresentation as to the cost of the machine is not such a fraud as goes to affect the amount insured and paid for, or that under our valued policy law this is a misstatement or misrepresentation of which, under that law, the insurer can avail itself. Cost is not the measure of value. Insurance is made on value, not on cost. It was open to the insurer to ascertain value —it was bound to do so and had no right to rely for that value on the statement of the insured as to cost, if

she made one, and that is disputed, but was bound itself to determine value, that is the amount for which it would insure and on which it charged and collected its premium. Having insured at a stated valuation for a stated amount, and charged its premuim on that valuation, it is bound, under our law, in that amount. Logically, I should not agree to a reversal. On a new trial that issue may disappear if the jury finds that the insured made no representation as to cost. I agree to a reversal and remander merely that there may be a disposition of the case by our court. In doing so, I do not agree that the value is open to inquiry or that the statement of cost, even if made, is such a fraud as avoids the policy. On all the other points so thoroughly covered by my Brother NORTONI, I am in entire agreement with him.

## SEPARATE OPINION.

ALLEN, J.—I am unable to concur in all that is said by my Brother NORTONI in the opinion written by him herein. I agree with what is said to the effect that there was evidence tending to show a false representation by plaintiff of a material fact, as an inducement to the issuance of the policy, sufficient to take that question to the jury; and that in any event it was error to give the peremptory instruction for plaintiff. But I am not prepared to agree with the view expressed as to the effect of the statement in the policy as to the cost of the automobile.

If it be true that the effect of sections 7024 and 7025, Revised Statute 1909, is to leave warranties which pertain to matters material to the risk just where they were at common law and the cases so hold (see Dolan v. Insurance Co., 88 Mo. App. 666; White v. Insurance Co., 93 Mo. App. 282), then the statement contained in the policy accepted by plaintiff, that the automobile cost $2000, and which by the terms of the

policy plaintiff warranted to be true, is to be regarded as a warranty, if it pertains to a matter material to the risk. That it does pertain to a matter material to the risk I think is undoubtedly true, as a matter of law (see authorities, supra), and it seems to me that the matter involved is one material to the risk wholly apart from the question of the *value* of the property insured, and that hence the warranty in the policy does not become inoperative because of the effect of the valued policy statute. This statute does not permit the insurer to dispute the value of the property (at the time of the issuance of the policy) in order to reduce the amount of the recovery; but I take it that this does not mean that a warranty as to a matter otherwise material to the risk is rendered nugatory for the reason alone that it is utilized as a factor in estimating value.

My Brother NORTONI's opinion proceeds upon the theory that the statement as to *cost* pertained solely to *value*, because it affected alone the amount for which the policy would be written. I think, however, that this is a *non sequitur*. The cost of an article is quite a different thing from its value. What it cost is a definite fact, whereas its value is a matter of opinion. The supposed cost of an automobile may be, and evidently in this case was, one of the factors reckoned with in arriving at its supposed value; but while this is true, it is also true that the cost is a matter material to the risk, regardless of the use thereof in determining the value. Whatever may have been the reasonable market value of this automobile, the evidence goes to show that defendant would not have issued this policy had it known the truth as to its cost; and it may be readily assumed that no insurer would issue a policy upon a second-hand automobile for more than the insured paid for it, and this regardless of its value; for such a practice would tend to encourage arson, or at least negligence in handling the thing insured, since it would pro-

vide a ready market for second-hand automobiles. Though this automobile may have been in fact of much greater value, it does not follow that defendant would have issued this policy, no matter how great the value might have appeared to be, had it known that the insured paid only $1,000 for it, and put upon it $427.46 in extra equipment. Apart entirely from the value of the thing insured, to issue a policy to the insured for more than the property cost the latter, introduces an element into the hazard taken by the insurance company which materially affects the risk. It is said here that while the cost and the "model" of the automobile were both considered in arriving at the putative value, nevertheless no matter what the value might appear to be the limit of the insurance would always be the cost.

I do not understand the defendant here to question the value of the property, at the time of the issuance of the policy. But I understand defendant's argument to be that a warranty as to cost is a warranty material to the risk regardless of what the value may be, because of the fact that to issue a policy for more than the cost would be to greatly increase the hazard, particularly in insurance of this character.

There are other questions involved as to which I express no opinion at this time. I concur in reversing the judgment and remanding the cause, in order to dispose of the case before us.