GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V.
FRANKLIN E. YOUNG.

Decided March 6, 1907.

**1.—Carrier—Negligence—Evidence.**

In a suit for personal injuries caused by the breaking of an automatic coupler whereby the plaintiff was thrown from the car, evidence considered, and held to support a finding by the jury that the defendant was guilty of negligence in the handling of its train, and that such negligence caused the breaking of the coupler.

**2.—Suppression of Evidence.**

The refusal to produce material evidence upon demand of the opposite party is a circumstance which may be taken into consideration in determining a question of fact.

**3.—Negligence—Prima Facie Case.**

When, in a suit for personal injuries, plaintiff proved the breaking of the coupler, the parting of the train and his consequent injury, he made a prima facie case of negligence against the defendant, and the burden then devolved on the defendant to show proper care for the safety of its passengers, including a proper inspection of appliances on the train.

**4.—Verdict not Excessive.**

Evidence of injuries considered, and held to support a verdict for $15,000 damages.

Appeal from the Forty-fifth District Court, Bexar County. Tried below before Hon. J. L. Camp.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.—The court erred in giving to the jury the first paragraph of the main charge, which reads as follows: "If you find from the evidence that on or about the 20th day of March, 1905, plaintiff was a passenger on one of defendant's trains, and that while he was in the act of passing from one coach into another, the coupling which held said coaches together broke, and that said coaches thereby became separated, and plaintiff was thereby thrown, or fell, between said coaches upon defendant's track, and that by reason thereof he has sustained any of the injuries complained of in his petition—and you further find that the coupling which held said coaches together was weak and in a defective condition, and defendant had placed such a number of coaches in said train that the strain upon said coupling was too great, and that the engineer in charge of said engine operating said train caused said engine to be suddenly moved forward with great force and violence, and that as a result of said weak and defective condition of said coupling, if you find it was in such condition, and the placing of such a number of coaches in said train that the strain upon said coupling was too great, if you find such number of coaches were so placed in said train, and the sudden jerking of said engine with great force and violence, if you find it was so jerked, caused said coupling to give way or break and said coaches to separate, and plaintiff to fall between same, and you further find that in so operating said train in such manner and in such condition, if you find it was so operated in such manner and in such con-

dition, the defendant was guilty of negligence, and that such negligence, if any, was the proximate cause of plaintiff's injuries, if any, then you will find for the plaintiff, unless you find for defendant under the instructions hereinafter given you."

That the charge was conflicting and calculated to mislead and confuse the jury, see Baker v. Ashe, 80 Texas, 361; Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 81; International & G. N. Ry. v. Welch, 86 Texas, 203; Galveston, H. & S. A. Ry. v. Herring, 36 S. W. Rep., 129; Houston City St. Ry. y. Farrell, 27 S. W. Rep., 902.

The court erred in giving to the jury the third paragraph of the main charge, which reads as follows: "Negligence, as applied to the plaintiff herein, means a failure to use that degree of care that would be exercised by an ordinarily prudent person under similar circumstances; and as applied to defendant herein, means a failure to use that high degree of care that would be exercised by a very cautious, competent and prudent person under similar circumstances."

Examples of charges held to have been misleading on this point: Texas Mid. Ry. v. Tidwell, 49 S. W. Rep., 641; Missouri, K. & T. Ry. v. Rodgers, 89 Texas, 679; Turner v. Ft. Worth & D. C. Ry., 30 S. W. Rep., 253; Texas Mex. Ry. v. King, 14 Texas Civ. App., 295.

*John H. Clark*, for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit, alleging that he had received personal injuries through the negligence of appellant in placing too many cars in one train, that a sudden violent jerk was given whereby a weak and defective coupling gave way and the train was parted and appellee thrown to the roadbed and seriously and permanently injured. Appellant filed general and special demurrers, a general denial, pleas of contributory negligence, and due inspection and that the accident had not been caused by any negligence on its part. A trial by jury resulted in a verdict in favor of appellee for $15,000.

It appears from the evidence that appellee was a passenger on a train, going from San Antonio to Flatonia, that when the train neared Sandy Fork, a siding about fifteen miles west of Flatonia, it began stopping to permit several passengers to alight, and while it was moving very slowly, appellee started through the vestibule between the chair car and a smoking car just ahead of it, and the two cars parted with a tremendous jerk and appellee was thrown to the ground and permanently injured. We find that the parting of the cars occurred through the negligence of appellant. It appeared from the evidence that the parting of the train occurred by reason of the fracture of a part of the automatic coupler known as the "tongue" which fastens the coupler. It is a piece of metal hinged to the knuckle or automatic coupler by a pin.

The broken tongue was taken by the employes of appellant to Glidden and placed in the hands of the car repairers and was not produced in court although notice was served on appellant to produce it. The witnesses for appellant, its employes, were the only ones who testified in regard to the condition of the tongue and their testimony tended to show that there was a flaw, or hollow, or hole, in the tongue that was not visible from the outside and that the break in the metal occurred

at that point. There was no evidence of an inspection of the tongue on the part of appellant. There was evidence, from at least one witness, that he had examined about a dozen broken tongues during the seven years that he had worked for appellant. The tongue in this case was a cast iron, and whether it was as originally constructed or had been broken and mended by appellant's car repairers was not shown. No experts in the matter of the construction of machinery were introduced, the witnesses who testified about the coupler being engineers, conductors and brakeman. The evidence did not indicate that they knew anything about the manufacture of machinery.

The train on which appellee was riding, when hurt, was a very heavy one, there being twelve coaches, and two engines were required to pull it. When the train parted, the air brakes were automatically thrown on by the parting of the air hose. It was what is known as an emergency application of air, and there was testimony to show that when a train is moving, as was the one in question, the application should stop it at once. What is known as service application of air was on already and the train was stopping by reason of it when the break came. The engineer on the head engine swore that if the train was standing still the going on of the emergency brakes would have no effect on the train, and if it was going slow there would not be a hard jar, but it would stop the train instantly and have very slight effect on the cars. That witness as well as others swore that the train was barely moving—had practically stopped when the break occurred—and that the application of the emergency brakes would have the effect of stopping the cars instantly, and that it would not throw the cars back or forward. That the stopping would merely cause a jar. In this instance, however, when the break occurred and emergency air went on the cars stopped from ten to twenty feet apart. If the evidence of appellant's witnesses be true there must have been some extraordinary antagonistic force to overcome the power of the brakes and cause the cars in front of the break to move ten, twelve or twenty feet before they stopped. That force must have been exerted by a tremendous power, and can be accounted for in no way except by the inference that steam was applied on the locomotives. There must have been this application of steam to create a force which not only tore in part a piece of iron 10 or 12 inches in length and 10 or 12 inches around, but which when the full force of the air brakes was applied moved four or five coaches and two engines, a distance of ten to twenty feet. The jury could have found from the evidence that the distance was twenty feet. These circumstances corroborate the testimony of appellee to the effect that the front portion of the train was jerked from the other portion by a "tremendous jerk." The surroundings can be accounted for reasonably on no other hypothesis, and we think the jury was justified in finding that the break occurred in the train by the negligent application of steam in the locomotive. This was one of the grounds of negligence alleged in the petition. It follows not only from this that there is no necessity for entering into a discussion of the duties of appellant in connection with machinery bought by it from the manufacturer, but because there is nothing to indicate that the tongue had been bought from a manufacturer, or that if it had been so purchased

that it had not been broken before and remolded or repaired by appellant.

All uncertainty as to the condition of the tongue of the coupling apparatus might have been removed by an exhibition of it in court, but appellant, although notified by appellee to produce it in court, chose to suppress its silent but forcible testimony. No reason or explanation is offered for the failure to produce the broken appliance, although it was shown to be in its possession. The appliance was the best evidence of its condition, and if it had been produced in court it could have been ascertained whether it had any defect, and if so whether it was one in construction or one that supervened afterward. Appellant had that evidence and failed and refused to introduce it or to give any explanation of its failure to do so, and the presumption arises that the appearance of the broken tongue would not have benefited appellant. (Underwood v. Coolgrove, 59 Texas, 164; Welsh v. Morris, 81 Texas, 159.) There was evidence to the effect that the defect could have been detected by the removal of the rust on the iron, and by producing the appliance that evidence could readily have been corroborated or disproved. Appellee could not get the evidence, appellant had it and would not produce it, and must rest under the suspicion arising from such failure.

When appellee showed the breaking of the coupler and the parting of the train and his consequent injury, a *prima facie* case of negligence was made out against it, and it then devolved upon appellant to show the exercise of the highest degree of care to secure the safety of the passengers, and if the evidence in this case, offered by appellee, tended to show that a careful inspection of the appliance might have disclosed the defect, it devolved upon appellant to show that it had made such inspection, and a failure to do so was a failure to meet the *prima facie* case made by appellee. There was evidence that the defect might have been discovered by the removal of the rust from the appliance, and proof that numbers of such appliances broke as did this one, and these facts called for proof of care in the inspection of this appliance. No proof of inspection was attempted. St. Louis S. W. Ry. v. Parks, 97 Texas, 131.

The foregoing discussion of the facts disposes of the first five assignments of error, and the sixth, which complains of the charge of the court, is not meritorious. The charge makes a fair and clear presentation of the issues raised by the pleadings and evidence. The defect in the appliance which broke, the size of the train and sudden jerking of the cars concurred in producing the breaking in two of the train and the injury to appellee.

The third paragraph of the charge, of which complaint is made in the seventh assignment of error, merely gives an approved definition of the negligence as applied to the passenger and common carrier, and consequently is not erroneous. It does not hint at comparative negligence and could not have misled the jury.

Appellee was a practicing physician when injured, and was a healthy man, more than six feet in height and weighing 247 pounds. The fall from the cars broke his collar bone in two places, his right arm was

broken and one end of the bone run under the other, where it is pressing under the hollow of the arm; his shoulder blade was broken and his leg injured so that it has not recovered, and his back was injured. He has been injured so as to produce constant constipation, and while his normal pulse was 70 to 75 degrees it is at times since his injury as high as 135. He was rendered unconscious by his fall and it was quite a while before he recovered complete consciousness, and he suffered great pain. His nervous system has been greatly disturbed and his heart troubles him and hemorrhoids have resulted from his constipation. Appellee was fifty years old when hurt and was engaged in the practice of surgery and diseases of women. He testified that he earned from $4,000 to $8,000 per year. The right arm is an inch and a half or two inches shorter than the left, and his jaw was injured so that a part of the bone worked out. The use of the right arm is greatly impaired and he could not perform delicate operations with it, and its condition is permanent. We do not think the verdict is excessive.

The court did not err in his charge on the measure of damages. There was no evidence tending to show that appellee had by negligence augmented his injuries, and the court did not err in ignoring such issue. The judgment is affirmed.

*Affirmed.*

Writ of error refused.