ST. PAUL FIRE & MARINE INS. CO. v. GARNIER. (No. 8520.)

(Court of Civil Appeals of Texas. Ft. Worth. June 2, 1917. Rehearing Denied June 30, 1917.)

1. INSURANCE ⬅262—APPLICATION—REPRESENTATIONS IN SUBSEQUENT LETTER.

Where the letter sent with a policy by the agents of defendant insurer to insurance brokers showed that they were not willing for the policy to take effect until they had been furnished with additional information, a reply by 'the brokers, written with the knowledge and consent of insured's son, who negotiated for the policy, was essentially a supplement to the written application, and any intentional fraud perpetrated therein in order to remove the · objections indicated would defeat recovery on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 557.]

2. INSURANCE ⬅281 — FRAUD — MATERIAL MISREPRESENTATIONS.

Representations that a barn was worth $5,000 and that another company would have insured it for $4,000 were material, where made with intent to induce insurer to consent to the policy becoming effective and with knowledge of the falsity constituted fraud.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 597–600.]

3.· EVIDENCE ⬅77(1)—PRESUMPTION—FAILURE TO PRODUCE WITNESS.

Where the proof showed fraud on the part of plaintiff's vice principal, plaintiff's failure to introduce him warranted the presumption that if his testimony had been offered it would have been adverse to plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97.]

4. INSURANCE ⬅136(2)—DELIVERY OF POLICY.

The uncommunicated understanding of a representative of insurer's general agents that the policy had been delivered and was in force, and the fact that after the fire an adjuster entered into negotiations with insured looking to a settlement, could not be construed as a delegation of authority by insurer's agents to the brokers to deliver the policy, contrary to the terms of their letter sent with the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 220, 221, 226, 227.]

5. INSURANCE ⬅94—UNAUTHORIZED DELIVERY OF POLICY—RATIFICATION—EVIDENCE.

The uncommunicated understanding of such representative that the policy had been delivered and was in force, and that, after the fire adjuster entered into negotiations with insured looking to a settlement, would not constitute a ratification of the unauthorized delivery of the policy or waiver of the rights to complain thereof in the absence of facts showing that insurer's agents knew of fraudulent representations made in procuring the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 124.]

6. TRIAL ⬅136(3)—QUESTIONS OF LAW—CONSTRUCTION OF LETTER.

Whether a letter authorized delivery of a policy was a question of law, where the letter was unambiguous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 326.]

7. INSURANCE ⬅136(2)—AUTHORITY TO DELIVER POLICY—EVIDENCE.

A letter sent to insurance brokers with policy, asking for additional information, and concluding, "We would like to have this detail information in our files before finally passing the risk," showed as a matter of law a lack of authority to deliver.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 220, 221, 226, 227.]

8. INSURANCE ⬅262—CONDITIONAL DELIVERY OF POLICY — SUBSEQUENT FRAUDULENT REPRESENTATIONS.

If there was an authorized conditional delivery to take effect after furnishing further information as to value of property insured and such additional information, when furnished, consisted of material misrepresentations made with fraudulent intent on the part of insured's son, who procured the insurance, the policy never became effective.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 557.]

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. INSURANCE ⊚⟞281—CONDITIONAL DELIV-ERY OF POLICY—SUBSEQUENT FRAUDULENT REPRESENTATIONS.

Although there was an authorized immediate delivery of a policy to take effect at once where there was an understanding that policy should not remain in force unless further good-faith assurances of value were furnished, fraudulent misrepresentations furnished by insured's agents, which were material in inducing insurer's agents to take no steps to cancel policy avoided it.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 597–600.]

10. INSURANCE ⊚⟞256(2) — MISREPRESENTA-TIONS IN APPLICATION—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4947, providing that misrepresentations of fact in an application for insurance shall not render the policy void, although it is so stipu-lated, unless such misrepresentations are ma-terial to the risk or contributed to the loss, one who procures the issuance of a policy by intentional fraud practiced by himself or his agents cannot invoke the benefits of the statute.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 540.]

Appeal from District Court, Cooke Coun-ty; C. F. Spencer, Judge.

Action by J. D. Garnier against the St. Paul Fire & Marine Insurance Company. Judgment for plaintiff, and defendant ap-peals. Reversed and rendered.

Lewis Rogers, of Gainesville, and E. G. Senter, of Waco, for appellant. Stuart, Bell & Moore, of Gainesville, for appellee.

DUNKLIN, J. The St. Paul Fire & Ma-rine Insurance Company has appealed from a judgment in favor of J. D. Garnier, based upon a fire insurance policy issued by the company in favor of plaintiff, covering a barn and some of its contents which were destroyed by fire. The policy was dated May 26, 1914, and by its terms insured the prop-erty from May 26, 1914, to May 26, 1915, $3,000 being the amount of insurance on the barn and $1,000 on farm machinery, tools wagons, etc., situated therein. The judg-ment recovered was for the full amount of insurance on the barn and for $600 the value of certain of its contents which were burned, other articles insured having escaped the fire.

The policy was issued by Cravens & Cage, the general agents and managers of defend-ant company for the state, whose office and place of business was in Houston, Tex.; and the same was issued upon a written application dated May 25, 1914, with the name of the plaintiff signed thereto, al-though such signature was in fact written by his son, Dan Garnier, who acted for him in the negotiations for the insurance. The property insured was located on plaintiff's farm nine miles from the town of Gaines-ville.

F. A. Parde & Co., a firm composed of Frank A. Parde and L. S. Taylor, were en-gaged in business as fire insurance brokers or agents in the town of Gainesville, but prior to negotiations relative to the policy in controversy did not represent the plain-tiff, nor were they associated in any manner with Cravens & Cage, its general managers. Dan Garnier having applied to them for in-surance on his father's barn and residence and their contents, they applied to Cravens & Cage for a blank application for such in-surance, which was mailed to them. The application, after being filled out and signed, together with the written recommendation thereof by F. A. Parde & Co., was mailed to Cravens & Cage at Houston, and upon re-ceipt of the same Cravens & Cage filled out and signed the policy in controversy, and returned the same by mail to F. A. Parde & Co. in Gainesville. They were induced so to do by belief in the truthfulness of the state-ments contained in the application. Ac-companying the policy so mailed was the following letter:

"Houston, Texas, May 26, 1914.

"Messrs. F. A. Parde & Co., Gainesville, Tex-as—Dear Sirs: We are in receipt of farm ap-plication signed by J. D. Garnier and we are writing up this policy and inclosing it here-with. The valuations placed on these buildings, especially the barn, seem very high, and we wish you would tell us how you arrived at them. The barn you describe as being 60x60 ft., and 16 ft. high and valued at $5,000.00. Please tell us how you arrived at this valuation. Also, if possible, send us memorandum of machinery and vehicles in the barn, as these items seem very heavy. We would like to have this detail information in our files before finally passing the risk.

"Yours truly,     Cravens & Cage, Mangrs."

Presumably, upon receipt of the policy, F. A. Parde & Co. delivered the same to Dan Garnier, they having already received the premium of $120.75 therefor on May 23, 1914, and in reply to the foregoing letter they wrote the following letter, which the proof shows was dictated by Dan Garnier:

"Gainesville, Texas, May 29, 1914.

"Messrs. Cravens & Cage, Managers, Houston, Texas—Gentlemen: Your letter of the 26th inst. received and beg to say in regard to Mr. J. D. Garnier's barn, you stated in your letter that the barn insured at $3,000 seems very high. The barn is well worth $5,000, as Allen-Ware & Co. and also L. Beasley & Co., of this city worked very hard to write this insurance and would have insured it for $4,000, but as Mr. Garnier, being a personal friend of mine he decided to turn us his business, I told him I would insure it for $3,000. We finally land-ed the business. Mr. Boozier, manager of the Lyon Gray Lumber Company of this city, says it is well worth it, as he sold Mr. Garnier the lumber for the building of this barn. We would certainly hate to cancel this as our competitors have fought so hard for it. Mr. Garnier is considered one of the wealthiest farmers in Cooke county. We are also inclosing you a memorandum of machinery and vehicles and also diagram. With best wishes, we remain,

"Very truly,     F. A. Parde & Co.,
"By F. A. Parde.

"You also ask us for a memorandum of ma-chinery and vehicles in barn. They come as follows:

| | |
|---|---:|
| 1 binder | $200 |
| 4 buggies | 400 |
| 1 wagon, new | 200 |
| 1 drill | 100 |
| 4 planters | 200 |
| 1 mower, new | 50 |
| 5 sets harness | 200 |
| 2 saddles | 75 |
| 4 sets buggy harness | 100 |
| 4 cultivators | 160 |

"This makes a total of $1,685."

On June 2, 1914, the barn was burned. In the application for the policy it was stated that the barn was worth $5,000, and that the amount of insurance desired thereon was $3,000; that wagons, buggies, surrey, harness, saddles, ropes, whips, and blankets, situated in the barn, and upon which insurance was desired, were worth $1,000, and insurance in the sum of $500 thereon was sought; that farm machinery, tools, implements (not including thresher, and power or gasoline engine) hay carrier and attachments, cream separators and milk cans, situated in the barn upon which insurance was desired were worth $1,000, and the amount of insurance sought thereon was $500. The application for the policy also contained the following stipulations:

"In consideration of the policy to be issued on this application, I hereby covenant that the foregoing statements of valuation of property to be insured are true, and I covenant and agree that all the foregoing written answers to the several questions herein are correct and true in every particular; that the same are warranted on my part; that this application is my act, and not of said company or its soliciting agent; and that said application may be referred to in the policy to be issued thereon as a part of said policy and as a basis upon which said company shall issue the same. * * * This application shall not be construed as a contract of insurance as against said company until the same shall be approved by Cravens & Cage, Managers, which approval shall be evidenced by the issuance and delivery of their policy."

The policy contained, among other things, the following:

"This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The principal defenses pleaded by the defendant were: (1) That the policy was never delivered to the plaintiff by lawful authority of the defendant, but that he, through Dan Garnier, obtained possession thereof by fraud; that as shown by their letter inclosing the policy to F. A. Parde & Co., it was not the purpose of Cravens & Cage that the policy should be delivered unless further information requested in the letter should be furnished, and which when furnished would be sufficient to remove the objections indicated; that without awaiting further authority from Cravens & Cage, Dan Garnier procured the delivery of the policy to him with the fraudulent purpose and intent on his part at the time to burn the barn before Cravens & Cage could have opportunity to further investigate the risk and recall the policy, and that he did so burn it, and that at the time the policy was delivered both Dan Garnier and Parde & Co. knew that Cravens & Cage had not authorized such delivery. (2) Defendants further alleged that the personal property described in the application was not worth more than 50 per cent. of the valuation placed thereon in the application for the policy; that the barn which was valued in the application at $5,000 was not worth more than $1,000, and that the valuations of such property stated in the application were fraudulently made by Dan Garnier. It was further alleged that the statements in the letter to Cravens & Cage, signed "Parde & Co.," dated May 29, 1914, and copied above, to the effect that Allen-Ware & Co. and L. Beasley & Co. had worked very hard to write the insurance and would have insured the barn for $4,000, and that Mr. Boozier, manager of the Lyon Gray Lumber Company, had said that the barn was worth $5,000, were all false statements and known by Dan Garnier to be false at the time he procured that letter to be written; that Cravens & Cage believed such representations to be true, and but for such belief they would have procured the cancellation and return of the policy to them before the fire occurred. It was further alleged that the general reputation of Dan Garnier in the town of Gainesville at the time of said negotiations for the policy was that of a firebug who had promoted and caused several fires theretofore occurring in that community, by reason of which reputation he was unable to procure insurance from other agents there residing, and that the firm of Allen-Ware & Co. had already canceled out a policy upon the barn for a much smaller sum, and would not again issue a policy upon it for any amount, however small.

In answer to special issues the jury found that the barn, which was totally destroyed, was reasonably worth the sum of $3,000, and that the reasonable value of the personal property insured, which was destroyed, was $600. They further found that plaintiff did not enter into any conspiracy with any one to procure the issuance of the policy for the purpose of burning the barn in order to obtain the insurance money; that he did not obtain the policy through fraudulent representations that were material and relied on by Cravens & Cage; that he did not cause or procure the burning of the barn; that there was no fraudulent collusion between Dan Garnier and F. A. Parde & Co. to procure the issuance of the policy; that at the time the application for insurance was made, plaintiff considered his barn to be worth $4,000. The jury further found that in all the negotiations of Dan Garnier with reference to the procurement of the policy,

he was acting as the authorized agent of the plaintiff; that he did not procure possession of the policy through any fraudulent collusion with F. A. Parde & Co., or without the consent of Cravens & Cage; that he did not cause the barn to be burned; that at the time he made application for the policy he was not following a plan of procuring insurance upon properties and causing the same to be burned for the purpose of collecting insurance thereon, and that he did not procure the policy in controversy for such purpose. The jury further found that neither the representations - contained in the application for the policy, nor those contained in the letter of date May 29, 1914, addressed to Cravens & Cage, copied above, were material to the risk, and that the policy in controversy was delivered to plaintiff by authority of Cravens & Cage, defendant's managers.

Appellant insists, in effect, that the evidence conclusively shows that the delivery of the policy to the insured was not authorized by Cravens & Cage, its general managers. It is insisted, further, that the evidence conclusively shows that the statement made by Dan Garnier in the application for the policy that the barn was worth $5,000, and the further statements in the letter of May 29th, to the effect that other persons therein named had worked very hard to write the insurance and would have insured it for $4,000, and that the manager of the Lyon-Gray Lumber Company, who had furnished the lumber used in the construction of the barn, had said that the barn was well worth $5,000, were all false; that Dan Garnier knew of their falsity at the time they were made, and made them with the fraudulent intent of procuring the insurance; and that by reason of such fraud the policy never became legally effective, even though it could be said that its delivery to the insured was authorized by Cravens & Cage. And based upon those contentions, among others, complaint is made of error in the trial court's refusal of appellant's request for an instructed verdict in its favor.

At the time of the negotiations mentioned above the firm of Allen-Ware & Co. were the sole local representatives for defendant company in Gainesville, Tex., and they held a commission from the commissioner of insurance of the state, authorizing them to so act. But insurance on city property was the only kind of insurance written by those local representatives. All insurance issued by defendant on farm property was written in Houston by Cravens & Cage upon application addressed to them in Houston. The transactions between Parde & Co. and Cravens & Cage were the first and only transactions between those parties. The services of a local representative of the defendant company were not necessary to send in an application for insurance on farm property; any one could do so, and such an application

would receive consideration. If Parde & Co. were by Cravens & Cage given authority to deliver the policy, then the extent of such authority was fixed by the letter to them of date May 26, 1914, copied above. The uncontroverted proof shows that Dan Garnier knew that Parde & Co. were not the regular local representatives of the defendant company; also that he was fully informed of the contents of the letter of May 26th, and hence knew as well as did Parde & Co. the extent of their authority to represent defendant and of the conditions imposed by the letter of May 26th for the policy to become finally effective.

[1] All the communications between Parde & Co. and Cravens & Cage were by correspondence, and the letter of May 26th shows plainly that Cravens & Cage were not willing for the policy to take effect until they were furnished the additional information therein requested. The letter of May 29th in reply thereto was essentially a supplement to the written application already sent in for the insurance, and any intentional fraud perpetrated thereby in order to remove the objections indicated in the letter of May 26th would have the same effect to defeat a recovery on the policy as if they had been embodied in the original application.

[2] The uncontradicted proof shows the falsity of the following statements contained in the letter of May 29th, which were embodied therein at the instance of Dan Garnier after he was fully informed of the contents of the letter of May 26th: That Allen-Ware & Co. of Gainesville had worked very hard to write the same insurance, and would have insured the barn for $4,000; and that Mr Boozier, manager of the Lyon-Gray Lumber Company of Gainesville, who sold plaintiff the lumber with which to build the barn, had said that the barn was well worth $5,000. The proof conclusively shows, further, that Dan Garnier knew of the falsity of those statements when they were written; that those misrepresentations were intended by him to deceive Cravens & Cage and to induce them to believe that the barn was in fact worth $5,000, and thereby to induce them to consent for the policy to become effective; and that such misrepresentations did mislead K. S. Dargan, the representative of Cravens & Cage, who had charge of the negotiations, into the belief that the barn was worth $5,000. Under such circumstances those statements were undoubtedly material misrepresentations of fact within the meaning of appellant's plea that the insurance, if any, was procured by fraud on the part of Dan Garnier, plaintiff's agent.

The uncontradicted proof showed that several fires had occurred which had destroyed property belonging either to Dan Garnier, John Garnier, his brother, or Mrs. Monahan, his sister, on all of which insurance policies were collected; one of said policies being held by Mrs. Monahan, while two were

held by John Garnier and three by Dan Garnier. There was also proof of circumstances at least tending to raise a reasonable inference that some of those fires were started by Dan Garnier. After those fires a policy in another company, issued by Allen-Ware & Co. on plaintiff's barn, dated September 29, 1913, was by said agents canceled in March, 1914, some six months before the date fixed for its expiration. By that policy the barn in controversy was insured for $700, and its value was estimated by the agent at that time, and by Allen as a witness on the trial, at between $900 and $1,000. Another policy held by W. S. Jackson, a brother-in-law of Dan Garnier, in another company was canceled by that company about two weeks before the fire in controversy, immediately upon notice of its issuance.

In addition to the foregoing uncontradicted proof, Frank Parde testified that after the fire in controversy Dan Garnier told him that he had burned his father's barn upon which the policy in controversy was issued, and had also caused the other fires which burned his own property and upon which he had collected insurance; that his method of starting those fires was the use of certain chemicals which would be slow to start the fire and thus he would be enabled to get away from the locality before the fire started; and witness also related certain incidents in connection with some of those fires which he said were told to him by Dan Garnier. But that witness also admitted that he was at the time of the trial a prisoner in the county jail on an indictment for forgery, and that during a former term of court and pending the hearing of a motion to set aside a former judgment for plaintiff in the present suit, he had voluntarily retracted written statements given by him as a witness under oath at the fire inquest, to the effect that Dan Garnier had admitted to him that he had caused those several fires. He further testified, in effect, that the reason he made such retraction was through fear of Dan Garnier, who had threatened him with personal violence if he testified against him. He further testified that he expected to go free of punishment in the forgery case against him.

Aside from such testimony of alleged confessions by Dan Garnier that he started some of the fires mentioned, the testimony of Frank Parde of other facts intimately connected therewith, and forming material parts thereof, was corroborated by proof from other witnesses which was not contradicted.

By the verdict of the jury, $3,000, and not $5,000, was found to be the value of the barn; although according to the testimony of a number of disinterested witnesses its value was much less than $3,000; one of whom, a carpenter, testifying that after the fire he offered to rebuild the barn in accordance with plans and specifications furnished him by Dan Garnier as a duplicate of the old barn, for $1,406.96, which offer was not accepted.

[3] The record further shows that Dan Garnier appeared in the courtroom at the inception of the trial from which this appeal is prosecuted, and, upon suggestion by defendant's counsel to counsel for plaintiff that he be placed under the rule if plaintiff's counsel expected to use him as a witness, he was told by counsel for plaintiff to retire from the courtroom under the rule for witnesses; but he was never placed upon the stand as such witness, and never testified in the case, and there is no suggestion in the record that his testimony was not available to plaintiff at all stages of the trial. The proof above referred to of fraud on the part of Dan Garnier, plaintiff's vice principal, called strongly for a denial thereof by him if it was untrue, and plaintiff's failure to introduce him warranted the presumption, additional to such proof, that had he been offered as a witness his testimony upon that issue would have been adverse to plaintiff's case. G., H. & S. A. Ry. Co. v. Young, 45 Tex. Civ. App. 430, 100 S. W. 993; Bailey v. Hicks, 16 Tex. 222; Mitchell v. Napier, 22 Tex. 120; Miller v. Poulter, 189 S. W. 105, and other authorities there cited.

[4, 5] Some of the testimony of K. S. Dargan, the representative of Cravens & Cage mentioned above, indicates that prior to the fire he assumed that the policy had been delivered to the insured, and was in force, but that understanding on his part was never in any manner communicated to Parde & Co., or to plaintiff, or any one representing him, prior to the fire. It was also shown that after the fire defendant's adjuster entered into negotiations with the insured looking to a settlement of the loss, and reached an agreement with him upon the value of some personal property mentioned in the policy which had been burned. Such understanding on the part of Dargan and such efforts to adjust the loss could not be construed as delegating authority to Parde & Co. to deliver the policy in the first instance contrary to the terms of the letter of Cravens & Cage of date May 26th. In fact, the proof shows that the policy had already been delivered prior to such assumption on the part of Dargan, and prior, of course, to such efforts to adjust the loss. Neither could it be held that under such circumstances the defendant ratified the hitherto unauthorized delivery of the policy, or that it waived its right to complain that such delivery was unauthorized in the absence of any proof that, at the time of the attempt to adjust the loss, or any time prior to the fire, Dargan or Cravens & Cage knew of the fraudulent misrepresentations by Dan Garnier already mentioned. It is well settled that a party cannot be held to the ratification of a transaction without being fully informed of all the material matters relating thereto, and that the burden is upon one who asserts such a ratification to estab-

lish the same by proof. Sterling v. De Laune, 47 Tex. Civ. App. 470, 105 S. W. 1169; Skirvin v. O'Brien, 43 Tex. Civ. App. 1, 95 S. W. 696; 31 Cyc. 1647; 1 Mechem on Agency, §§ 395, 479. See, also, Sovereign Camp, W. O. W., v. Lillard, 174 S. W. 619, and authorities there cited.

[6, 7] The letter of May 26th is to be construed like any other instrument in writing, and whether or not it authorized a delivery of the policy is a question of law, and not a question of fact to be determined by the jury; the instrument being unambiguous in its terms. As a matter of law, it shows plainly a lack of authority on the part of Parde & Co. to deliver the policy until the additional assurances of value should be furnished, or, at all events, if an immediate delivery was contemplated, the same should not operate to make the policy effective until such additional assurances in good faith were furnished, and the mere fact that the names of Parde & Co. were indorsed upon the back of the policy could not lead to a different conclusion.

[8] If there was no authorized delivery of the policy at all, then, of course, plaintiff could not recover. If there was an authorized delivery conditioned to take effect only after further satisfactory assurances of value should be furnished, and if such additional assurances when furnished consisted of material misrepresentations made with fraudulent intent on the part of Dan Garnier to deceive Cravens & Cage, and which did have that effect, then the policy never became legally effective as against the defendant. Holt v. Gordon, 176 S. W. 902, and cases there cited.

[9] And even though it could be said that there was an authorized immediate delivery of the policy to become effective at once, then there is no escape from the conclusion that such delivery was upon the condition and with the understanding on the part of Cravens & Cage, which was known to Dan Garnier, that the policy should not remain in force unless further good-faith assurances of values of the property insured were furnished; and, as such assurances were not furnished, but in lieu thereof intentionally fraudulent misrepresentations were made by plaintiff's agent, Dan Garnier, which the evidence shows were material factors in inducing Cravens & Cage to take no steps to cancel the policy, but to consent, if they did consent, to a continuation of the risk, it follows that, because of the fraud practiced, the policy was not effective at the time of the fire. Del. Ins. Co. v. Hill, 127 S. W. 292; Indiana & Ohio Live Stock Ins. Co. v. Smith, 157 S. W. 755; Farber v. American Ins. Co., 191 Mo. App. 307, 177 S. W. 675; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; 14 R. C. L. pp. 1034 to 1037; 12 R. C. L. pp. 297 to 301.

[10] Article 4947, Vernon's Sayles' Texas Civil Statutes, is to the effect that misrepresentations of fact in an application for an insurance policy shall not render the policy void, even though it is stipulated in the application that same should have that effect, unless such misrepresentations are material to the risk, or contributed to the loss, and that whether the same were material or did contribute to the loss is to be determined by the jury. But one who procures the issuance of a policy by intentional fraud practiced by himself or his agent cannot invoke the benefits of that statute. It would be wholly unreasonable to suppose that in enacting that statute the Legislature intended thereby to enable any one to reap the fruits of his fraud.

Farber v. American Automobile Insurance Co., supra, was a suit for insurance on an automobile. One of the defences was that the insured procured the policy through fraudulent misrepresentations as to the value of the machine. In discussing a statutory provision to the effect that, when such a policy is issued, the value of the property insured should not be questioned in any proceeding, the court said:

"But obviously the statute intends that the contract valuation of the property so fixed by the amount of the insurance written in the policy shall be a valid one. There is nothing in the face of the statute to suggest otherwise, and, indeed, the implication is to the contrary. The statute contemplates and reckons with an insurance company in taking a risk through issuing its policy on property. In this connection it says, 'When taken, its value shall not be questioned in any proceeding.' Obviously the words 'when taken' imply that the negotiations antecedent thereto shall be honest and fair—that is, free from covin and deceit—with respect to material matter, to the end that a valid contract in respect of such value may be had."

And authorities cited in the opinion in that case support the announcement quoted. The case of Del. Ins. Co. v. Hill, supra, in which a writ of error was denied by our Supreme Court (128 S. W. xv), is to the same effect, although the question was not specifically discussed, for in the opinion a charge embodying the same legal principle was approved, and the policy in controversy in that suit was issued long after article 4947 of our statutes was enacted.

The foregoing conclusions render it unnecessary to discuss other assignments presented in appellant's brief, some of which appear to be meritorious, especially those predicated upon remarks made by counsel for plaintiff during the trial in the presence of the jury, and also in argument to the jury, which were often repeated, in violation of repeated rulings by the trial judge that same were improper, to the effect, that appellant, through its attorney, Rogers, had caused the institution of criminal proceedings against plaintiff for burning the barn, and through another of defendant's attorneys had instigated the fire inquest in order to obtain evidence to defeat the policy, etc., which charges were wholly irrelevant to any issue in

the case, were without proper support in the evidence to warrant them, and were reasonably calculated to be highly prejudicial to appellant. Those remarks were predicated alone upon the fact that Rogers had been employed by defendant to represent it in the present suit prior to some of those criminal proceedings in which he, as assistant county attorney, had represented the state, and the fact that another attorney for defendant had appeared at the fire inquest and had propounded questions to some of the witnesses then examined. But those facts, reasonably, could not, in any event, support the charges made.

For the reasons indicated, the judgment of the trial court is reversed, and judgment is here rendered for appellant.

### On Motion for Rehearing.

In our original opinion we were in error in saying that Mrs. Monahan was the sister of Dan Garnier. Another inaccuracy was in the statement, occurring in one portion of the opinion, that all the communications between Cravens & Cage and Parde & Co. were through the medium of correspondence. The first communication between them was a request by Parde & Co. over the long-distance telephone that Cravens & Cage send a blank application for the insurance in controversy. That request was mentioned in another portion of the opinion, but the evidence failed to show that this conversation amounted to anything more than such a request and the promise to comply therewith.

While Frank Parde did testify, as insisted by appellee, that prior to the negotiations for the insurance in controversy, Cravens & Cage had appointed him agent for another company, the Mercantile Fire Insurance Company, yet he further testified that he never procured from the commissioner of insurance of the state any authority to act as such agent, and that the dealings of Parde & Co. with Cravens & Cage were confined solely to the policy in controversy in the present suit.

The foregoing inaccuracies have no substantial bearing upon any material issues in the case, but they are corrected in view of the fact that appellee has stressed them in his motion for rehearing, and, with such corrections, the motion is overruled.