## GALVESTON, H. & S. A. RY. CO. v. WATSON et al. (No. 9101.)

Court of Civil Appeals of Texas. Galveston.
Feb. 14, 1928.

Rehearing Denied March 8, 1928.

1. Trial ⬳350(7)—Submitting issue of railroad's exercise of ordinary care in blowing whistle held proper, where parties approaching crossing neither saw nor heard train.

In action for death at a railroad crossing, submission of special issue whether railroad employees failed to exercise ordinary care as to blowing of whistle to give warning, to persons about to use crossing, of approach of train was not error, in view of presumption that parties approaching crossing neither saw nor heard the train.

2. Negligence ⬳122(5)—Reasonable presumption that sane persons exercise due care for their safety throws burden on one denying presumption to rebut it.

The reasonable presumption that all sane persons would exercise due care at all times for their own safety throws burden on those denying such presumption to rebut it.

3. Trial ⬳350(6)—Submitting issue whether train operatives kept proper lookout for persons crossing track held proper, where operatives were not called as witnesses.

In action for death at a railroad crossing, submission of issue as to whether railroad operatives kept proper lookout for persons attempting to cross tracks was proper, where evidence showed that an automobile approaching track within 300 feet could have been seen by one looking from the engine cab at distance of 900 feet from crossing, and railroad failed to call its operatives to show that they kept proper lookout, and made no showing as to why they were not called as witnesses.

4. Trial ⬳350(7)—Refusal to submit contributory negligence of passenger in automobile killed at railroad crossing held error.

In action for death of passenger in an automobile in railroad crossing collision, where there was testimony that, when occupants of automobile approached track, railroad was in plain view, and that approaching train could have been seen by them at distance of 500 feet from crossing, and there was evidence that negligence of driver in racing his car to the crossing was acquiesced in by other occupant, refusal to submit issue of decedent's contributory negligence was error.

5. Death ⬳99(3)—$7,500 for girl's death held not excessive.

$7,500 damages for death of girl at railroad crossing held not excessive.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by W. A. and Essie Watson against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for the plaintiffs, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Fulbright, Crooker & Freeman, M. C. Chiles, T. H. Cody, and John H. Crooker, all of Houston, for appellees.

LANE, J. This suit was brought by W. A. and Essie Watson against the Galveston, Harrisburg & San Antonio Railway Company to recover damages which they alleged they suffered by reason of the death of their daugh-

ter, Wilma. Watson, caused by the negligence of the servants and employees of the defendant.

They alleged their daughter was crossing the track of the defendant, and that the servants of the defendant in charge of one of its engines and trains negligently ran said engine and train at a reckless and dangerous rate of speed upon said crossing and against an automobile in which their daughter was riding, without sounding the engine whistle, and without exercising the care of an ordinarily prudent person to keep a lookout for persons, automobiles, and other vehicles crossing, or which were about to cross, its railway track, and that by reason of such negligence their daughter was killed.

There were other acts of negligence alleged by the plaintiffs, but, as all except those stated above were decided by the jury adversely to plaintiffs, of which decision no complaint is made, we deem it unnecessary to state them here.

Defendant answered by general denial and by plea of contributory negligence.

The case was tried before a jury upon special issues, and, in answer to the inquiries the jury found the defendant negligent in only two respects, to wit, first, in failing to exercise ordinary care in sounding the whistle of the engine for the purpose of giving warning of the approach of the train to persons who might reasonably have been expected to be about to use the public crossing; and, second, the operatives of the train failed to keep a proper lookout for persons who might be about to cross the railway track. They also found that both of said acts of negligence were the proximate cause of the accident which resulted in the death of the plaintiffs' daughter, and that the plaintiffs sustained damages in the sum of $7,500 by reason of the death of their daughter.

The defendant in every conceivable manner requested the court to submit the question of contributory negligence, but the court refused all of such requested charges, or to submit the question in any manner whatever.

Upon the findings of the jury, judgment was rendered for the plaintiffs for the sum of $7,-500, with interest thereon, and costs of suit. The railway company has appealed.

[1, 2] The court submitted to the jury special issue No. 1, reading as follows:

"Did the defendant, its agents, servants and employees, fail to exercise 'ordinary care,' as that term has been hereinbefore defined to you, as to the blowing of the whistle to give warning to persons who might reasonably have been expected to be about to use said crossing of the approach of the defendant's train to the crossing where the collision occurred?"

In connection with such submission, the court instructed the jury that, should they answer such issue "Yes," they should answer whether or not such failure was the proximate cause of the collision which resulted in the death of the plaintiffs' daughter.

Appellant insists that the submission of such issues constitutes reversible error. It substantially insists that there was no evidence raising the issue as to whether the operatives of the train used ordinary care to blow the whistle to give warning of the approach of the train to persons who might reasonably have been expected to be about to use the crossing, but, if there was any such evidence, there was absolutely no evidence tending to show that the failure to blow the whistle was the proximate cause of the collision. It insists that the burden was upon the plaintiffs to show that the failure to blow the whistle was the proximate cause of the collision, and that to do so they were required to show that the parties who were killed did not see or hear the approach of the train; that the presumption should be indulged that, when such parties approached the crossing, they were in the exercise of due care for their safety, and that, if so, they knew of the approach of the train, and that if they did see or hear the train as it approached the crossing, the blowing of the whistle would have been useless as a warning of the approach of the train.

We feel constrained to overrule appellant's contention. Applying the rule of presumption invoked by appellant, we should presume that the parties neither saw nor heard the train as it approached the crossing. The reasonable presumption that all sane persons would exercise due care at all times for their own safety throws the burden on those who would deny such presumption to rebut the same.

[3] Appellant's second contention is that the court erred in submitting the issue as to whether the operatives of defendant's train kept a proper lookout for persons attempting to cross the railway track of defendant, because there was no evidence raising such issue.

The contention is overruled. We think there was evidence raising such issue. The evidence shows that, had one been looking from the cab of the engine at a distance of 900 feet from the crossing, he could have seen a car approaching the railway track when it got within 300 feet of the track. In such circumstances, the judge and jury could have reasonably concluded that, had the operatives been keeping a lookout, they would have seen the car and its occupants at a point 300 feet from the railway track, while at the same time the engine on which the operatives were was at least an equal distance from the point of collision, and, having reached such conclusion, they would most likely have reached the further conclusion, from the fact that the operatives gave no second warning of any kind, that they were not keeping a proper lookout.

If the matters above stated are sufficient

upon which to reach a rational conclusion that the operatives gave no second warning er lookout, such conclusion is strengthened by the failure of the defendant to call the operatives, its employees, as witnesses to show that they were keeping a proper lookout, or else make some showing as to why they were not called as witnesses in its behalf. No attempt, so far as shown, was made by defendant to produce either the operatives or to procure their testimony. The natural inquiry that arises under such circumstances is, Why are those who unquestionably know whether they kept the proper lookout on the occasion in question, since they were the employees of defendant, and no doubt were available as such witnesses, not called to testify?

In 22 Corpus Juris, p. 115, §§ 55 and· 56, the following rules are stated:

"Where it is apparent that a party has the power ·to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that, if the more satisfactory evidence had been given, it would have been detrimental to him, and would have laid open deficiencies in, and objections to, ·his case which the more obscure and uncertain evidence did not disclose.

"Failure of a party to call an available witness possessing peculiar knowledge concerning facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of the party."

The rule above stated is followed in San Antonio & Aransas Pass Ry. Co. v. Blair (Tex. Civ. App.) 184 S. W. 566; Welsch v. Morris, 81 Tex. 159; St. Paul, etc., Co. v. Garnier (Tex. Civ. App.) 196 S. W. 980, and in many other decisions of our Texas courts.

[4] Appellant complains of the refusal of the trial court to submit to the jury the issue of contributory negligence on the part of plaintiffs' daughter, and insists that the evidence clearly raises that issue. We think the evidence raised the issue of contributory negligence, and that in refusing to submit such issue the court erred.

It was shown that, as the occupants of the automobile approached the railway track, and at a distance of 300 feet therefrom, the railroad was in plain view; that the train approaching the crossing where the collision occurred could have been seen by the occupants of the automobile at a distance of 500 feet or ˙more from the crossing before it reached the same. After the occupants got within 300 feet of the railroad, there was nothing to obstruct their view of the train. The automobile in which the persons killed were riding approached the railway at a speed of about 25 miles per hour, and could have been stopped within a distance of 10 feet. There were four occupants of the automobile, one young man, who was the driver, and three young women; all of said parties were riding in a crowded condition on the front seat of the car. The train which collided with the automobile was approching the crossing at a rate of 25 to 35 miles per hour, and could not have been stopped in less than several hundred feet.

Mrs. Christénsen testified that she was about 300 feet from the point of the collison at the time it occurred; that she saw the train as it approached the crossing; that she heard it whistle after it came out of the woods about 500 feet from the crossing; that she noticed the train because it was coming out of the woods as the automobile was coming out of the park; that she could see the train all the way; that, when the automobile passed her it was running very fast, and that she thought the occupants were trying to race the train; that she was fascinated, as she had seen so many down there trying to beat the train; that she thought the occupants of the automobile were trying to beat the train across, as they were running very fast, about as fast as the train, and they did not slacken their speed.

Charles Handley testified in part as follows:·

"All these parties were riding on the front seat. All four of them. How I come to recognize how they were sitting in the car, there was a girl that I thought I recognized. The boy was sitting behind the wheel, and there was a girl sitting next ·to him, and the other girl sitting next to her, jammed up, and the other one was sitting slanting, none of her body was on the door, but was sideways. She was not sitting on the door, but the largest part of her was leaning towards the back of the car. I .don't think she was sitting in the lap of the other girl, she may have had one leg on her, I don't know for sure. When I saw them go by, they had the appearance of laughing and talking; they were smiling; I don't know if they were talking."

There was a sign at the crossing with the words: "Rail Road Crossing."

Neither Handley nor Mrs. Christensen, the only eyewitnesses to the collision except the operatives of the train, heard any outcry from any one in the automobile party nor any word of warning from any one of them of the approach of the train. Both of these witnesses thought the occupants of the automobile were intent in beating the train across the crossing.

Appellees contend that there was no evidence one way or the other as to whether or not the deceased daughter of the plaintiffs saw the train as it approached the crossing where the collision occurred, whether or not she looked or listened for such approach, or did or failed to do any act whatever which

could be said to constitute negligence contributing to the collision as she approached the railway, and therefore the court did not err in refusing to submit the issue of contributory negligence.

We are not prepared to agree with appellees' contention. We think there were facts and circumstances shown which would raise the issue of contributory negligence. If the jury were permitted to draw a conclusion from the facts and circumstances shown, they might have reasonably reached the conclusion that, though the train was in plain view of the occupants of the automobile as it approached the crossing, such occupants neither saw nor heard its approach because they failed to exercise ordinary care by looking and listening for the approaching train. The jury might have reasonably concluded from the facts and circumstances that the automobile party as a whole was intent in beating the train to and across the crossing where the collision occurred, and that the attempt of the driver of the automobile so to do was acquiescsed in by the other occupants of the car. That the driver of the car was guilty of an act of negligence, which contributed to the accident, in driving his car onto the railway track in front of the approaching train, cannot be reasonably questioned, and we think, as we have already said, the jury could have reasonably found from the evidence that his conduct was acquiesced in by the other occupants of the car. They could, in any event, have found that none of the party was in the exercise of ordinary care for his or her own safety as they approached the railway.

[5] We are not prepared to hold that the judgment rendered is excessive, as contended by appellant.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

#### On Motion for Rehearing.

Upon request from appellees, we find that Wilma Watson, the daughter of appellees for whose death this suit was brought, was a guest in the automobile in which she was riding at the time it was struck by the train, that she had no interest in the automobile, and was not driving the same at the time of the collision.

Appellees have also filed their motion for a rehearing, in which they say:

"It is respectfully submitted that there is no distinction between the case at bar and the Salter Case heretofore decided by this court and reported in 285 S. W. 1112. We are unable to see any distinction between the cases, nor has the court seen fit to undertake to distinguish the cases, and such case was very prominently discussed by appellant and appellees. Nevertheless we find ourselves embarrassed to some extent by the silence of the court with reference to its silence on the matter, not knowing whether or not it regards itself as having reversed its position in the Salter Case."

To relieve the embarrassment of counsel for appellees mentioned in the motion, in so far as we can, we will try to point out the distinction between the Salter Case and the present case.

There is no conflict with the holding in the Salter Case, in that the situations passed upon were not the same. In the first place, what was decided there was that the evidence was insufficient to sustain the jury's specific finding that Vivian Salter was guilty of contributory negligence in failing to seasonably *see* the train and warn the driver, while here it was simply determined that there were enough facts and circumstances in evidence to raise the issue of contributory negligence generally upon this girl's part— two decidedly different questions. In the second place, the issue of contributory negligence upon Vivian Salter's part, as just indicated, was expressly limited by the questions submitting it—taken along with the jury's findings in answering—to the one particular of whether or not she saw the train in time to have warned the driver, etc., while here that issue was not so confined, but was asked to be submitted generally, that is, whether or not the girl was so negligent in any respect.

With the above explanation, the motion is refused.